**Sondra WEISBROD, Plaintiff-Appellant,**

**v.**

**Virginia DONIGAN, individually and as an employee of the State of Florida, Department of Health and Rehabilitative Services, et al., Defendants-Appellees.**

No. 80–5423.

United States Court of Appeals,
Fifth Circuit.
Unit B

July 20, 1981.

Rehearing and Rehearing En Banc
Denied Sept. 29, 1981.

Patterson & Traynham, Jerry G. Traynham, Tallahassee, Fla., for plaintiff-appellant.

Chester G. Senf, Asst. Gen. Counsel, Dept. of HRS, Tallahassee, Fla., for Donigan & HRS.

Pamela L. Lutton, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for Florida Career Service Com'n, Leiby, Chapman & Quigley.

Before MORGAN, RONEY and KRAVITCH, Circuit Judges.

PER CURIAM:

Sondra Weisbrod addressed police, who were arresting her on a bench warrant, in profane terms, a word usage which is apparently not rare.[1] Her supervisor first suspended her pending an investigation and then discharged her from a position with the Florida Department of Health and Rehabilitative Services, on the ground that such conduct was unbecoming an agency employee. The discharge, confirmed by the Florida Career Service Commission, was set aside by a Florida court because the conduct was unrelated to Weisbrod's employment. The court ordered reinstatement, back pay and attorney's fees. *Weisbrod v. Florida Career Service Commission and Department of Health and Rehabilitative Services*, 375 So.2d 1102 (Fla.App.1979).

Not satisfied with this relief, Weisbrod pursued this previously-filed action under 42 U.S.C.A. § 1983 against supervisor Virginia Donigan, the agency, and the Florida Career Service Commission and its members who decided the administrative appeal against her. Asserting a First Amendment claim for violation of her right to free speech and due process claims for failure to provide a pretermination hearing and a nine-month delay in handling her administrative appeal, Weisbrod sought damages for emotional stress and injury to her reputation.

On cross-motions for summary judgment, the district court ruled in favor of the Commission and the agency on the ground they were improper parties. *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). It also held the supervisor and the Commission members were protected from suit under the qualified immunity standard of *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). Plaintiff appeals only from the latter ruling.

Defendants are entitled to qualified immunity if the record establishes they did not act in disregard of clearly established constitutional rights or with a malicious intent to deprive plaintiff of her rights.

---

1. ***Goodness Gracious!***

   Americans utter one billion curse words daily and swear 700,000 times a second, according to Paul White, founder of an organization called "Cursaholics Anonymous." Mr. White now wants Congress to make public profanity a felony. We would just like to say, for the record, that we think this is one of the more outrageous %&$*#@! ideas we've heard in many a moon.

   Wall St. J., June 11, 1981, at 26. *See also Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

*Wood v. Strickland,* 420 U.S. at 322, 95 S.Ct. at 1000. Since this case was decided on summary judgment, the evidence must present no genuine issue of fact on either of these points. Fed.R.Civ.P. Rule 56(c).

The first prong of the qualified immunity test is met because the record indicates defendants did not act in disregard of any well-settled constitutional rights. With respect to the First Amendment claim, Weisbrod's profane speech-related conduct was not clearly constitutionally protected. *See Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). This Court has held an employee cannot claim First Amendment protection for speech-related conduct where the ground for discharge was not the speech itself, but because it evidenced character traits undesirable in an employee.[2] This case does not involve a discharge on the basis of the expression of opinions or other protected speech.[3] As to the due process claims, Weisbrod offers no authority indicating the failure to hold a pretermination hearing and the delay in the process of her administrative appeal were clear violations of her constitutional rights.

The second prong of the immunity defense, malicious intent, is also satisfied, although not for the reasons stated by the district court. The court based its decision on the absence of any "allegation in Plaintiff's Complaint that any defendant acted with impermissible intent or malice." This reasoning is no longer valid after *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980), decided after the decision in this case, in which the Supreme Court held a plaintiff was not required to allege bad faith in order to state a claim for relief. Unlike *Gomez,* however, the present case was decided on summary judgment and not merely on the basis of the com-

plaint. A review of the record reveals no evidence that Donigan or the Commission members acted with malice or bad faith. Plaintiff's own testimony in a deposition contains no such assertions, and could be interpreted to negative malice and bad faith. Therefore, no genuine factual dispute exists on the issue of malice.

Because we uphold the district court's finding of qualified immunity, we need not reach defendants' claim of absolute immunity. No reversible error having been shown, the grant of summary judgment for defendants is affirmed.

AFFIRMED.

2. *See Garza v. Rodriguez,* 559 F.2d 259 (5th Cir. 1977), *cert. denied,* 439 U.S. 877, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978); *Megill v. Board of Regents of the State of Florida,* 541 F.2d 1073 (1976).

3. *Compare Abbott v. Thetford,* 534 F.2d 1101 (5th Cir.) (*en banc*), *rev'g and adopting dissenting opinion,* 529 F.2d 695, 701 (5th Cir.

1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 804 (1977), *and Smith v. United States,* 502 F.2d 512 (5th Cir. 1974) *with Lewis v. Spencer,* 490 F.2d 93 (5th Cir. 1974), *and Duke v. North Texas State Univ.,* 469 F.2d 829 (5th Cir. 1972), *cert. denied,* 412 U.S. 932, 93 S.Ct. 2760, 37 L.Ed.2d 160 (1973).