Gregory Scott **SCHERER**, Plaintiff,

v.

Ralph **DAVIS**, individually; Chester Blakemore, officially as Director of the Department of Highway Safety and Motor Vehicles; and J. Eldredge Beach, individually and as Director of the Florida Highway Patrol, Department of Highway Safety and Motor Vehicles, Defendants.

No. TCA 79–0885.

United States District Court,
N. D. Florida,
Tallahassee Division.

July 15, 1981.

Order Amending Judgment June 7, 1982.

110.061, *Florida Statutes* and its implementing rules and regulations are unconstitutional because violative of due process in their failure to safeguard an employee's rights prior to termination, to guarantee back pay or reinstatement for wrongful termination, and failure to provide expeditious post-termination hearing and decision.

On April 6, 1981, this case was tried before the court without a jury. Fed.R.Civ.P. 39(b). In accordance with Federal Rule of Civil Procedure 52(a), the court makes the following findings of fact relevant to the disposition of this case.

*Findings of Fact*

Gregory Scott Scherer was an employee of the State of Florida Department of Highway Safety and Motor Vehicles, Division of Florida Highway Patrol, Troop A, employed as of January 13, 1975, holding the position of a Radio-teletype Operator in Pensacola, Florida. Plaintiff Scherer had attained permanent status within the Career Service System of the State of Florida and had been consistently rated a satisfactory employee. His gross pay as of October 25, 1977, on a monthly basis, was seven hundred fifty-three dollars and thirty-three cents ($753.33).

Ben R. Patterson, Patterson & Traynham, Tallahassee, Fla., for plaintiff.

Pamela L. Lutton, Asst. Atty. Gen., Dept. of Legal Affairs, Civ. Div., Tallahassee, Fla., for defendants.

**MEMORANDUM OPINION AND ORDER**

STAFFORD, Chief Judge.

Plaintiff Gregory Scott Scherer brought this complaint pursuant to the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Declaratory and injunctive relief are sought pursuant to 28 U.S.C. §§ 1651, 2201, and 2202. The court has jurisdiction under 28 U.S.C. §§ 1343 and 1331. Scherer seeks monetary damages, as well as injunctive and declaratory relief, for the defendants' failure to provide him with either pre-termination or post-termination due process; he also seeks a declaration that Section

During the months of September and October of 1977, the Executive Director of the Department of Highway Safety and Motor Vehicles was Ralph Davis. Davis continued as Executive Director of the agency until September 30, 1978, when he was succeeded by Chester Blakemore. The Director of the Florida Highway Patrol (FHP) in 1977 and continuing to the present was and is Colonel Eldredge Beach. The policy of the Department of Highway Safety and Motor Vehicles required Beach and Davis to approve each and every suspension or dismissal of an employee of the FHP, including the dismissal of Scherer. Beach and Davis approved the plaintiff's dismissal from his employment effective October 25, 1977.

On September 9, 1975, the Department of Highway Safety and Motor Vehicles had adopted a policy on the subject of dual

employment and compensation, Policy Number 009. The policy was signed by Ralph Davis. The purpose of the policy was to require approval of outside employment in order to avoid a conflict of interest. Pursuant to the requirements of that policy, on August 26, 1977 Scherer requested that his troop commander, Captain K. S. Sconiers, approve Scherer's outside employment as an Escambia County Sheriff's Reserve Deputy. Sconiers told the plaintiff he doubted that approval would be granted, but by memorandum dated September 1, 1977, Captain Sconiers notified the plaintiff that he had permission to accept parttime employment as an Escambia County Sheriff's Reserve Deputy. The memorandum further stated that such permission would be rescinded "[S]hould this employment interfere in any way with your duties with this department." Sconiers claims his secretary was supposed to hold the September 1 letter until he had "checked with Tallahassee."

Relying on the letter of approval, Scherer purchased a uniform and a pistol and was employed parttime as an Escambia County Sheriff's Reserve Deputy assigned with other such officers to guard the set for the movie "Jaws II." By memorandum dated September 23, 1977, Capt. Sconiers informed the plaintiff that " ... the department feels that it would be of the best interest to our department for you not to accept this employment; therefore, your request ... is denied at this time."

On October 3, 1977, Sgt. W. A. Clark informed Lt. C. C. Wiggins that plaintiff was continuing to work as a reserve deputy and recommended Scherer's termination from the FHP. On October 4, 1977, Lt. Wiggins informed Capt. Sconiers of plaintiff's continuance to work as a reserve deputy and recommended Scherer's suspension or dismissal. On October 7, 1977, Sgt. Clark informed Capt. Sconiers that he had advised Scherer he was violating instructions and Scherer had responded that he had invested too much money in uniforms to give up his parttime work.

Sconiers then wrote to Col. J. E. Beach on October 12, 1977, attaching plaintiff's letter of request, the captain's own letters approving the request and rescinding the approval, Sgt. Clark's and Lt. Wiggins's memos, and recommending that plaintiff Scherer be suspended for three days for violation of the department's dual employment policy. On October 18, 1977, Lt. Wiggins ordered Scherer to terminate his employment as a reserve deputy and on the same date Scherer wrote to Capt. Sconiers explaining that he felt there was no reason for him to resign his outside employment because it did not interfere with his work as a radio operator for the FHP. Wiggins also wrote to Sconiers on that date saying Wiggins and Clark had spoken with Scherer and Scherer was unable to see any interference in his FHP duties which was caused by his reserve deputy duties. Sconiers testified at trial that Major A. P. Floyd, Deputy Inspector of the FHP, had caused him to not approve Scherer's outside employment because Floyd thought that the possibility of Scherer being subpoenaed in connection with his reserve deputy duties might conflict with his duties as a radio operator at the FHP.[1] No one ever identified the conflict to plaintiff; Wiggins testified he didn't know what the conflict was. Wiggins and Clark evidently asked the plaintiff only what his intentions were concerning his outside employment. On October 18, 1977, Sconiers forwarded to Beach the two letters of that date from Wiggins and Scherer's letter of that date, but mistakenly dated August 18, 1977.

By certified letter dated October 24, 1977 and received by plaintiff on October 25, 1977, Scherer was terminated from his FHP employment effective October 20, 1977. At no time prior to the letter of termination was the plaintiff given notice in writing of a proposed discharge or an opportunity to respond verbally or in writing to the official

---

1. Troopers E. D. Sapp and S. R. Bevis of Troop A (Sconiers' troop) also requested authorization to work secondary employment as security personnel on the Universal Studio's set in Santa Rosa County. They received approval which was never revoked.

charged with making the termination decision, the defendant Beach. At no time prior to October 25, 1977, was the plaintiff notified of any right that he might have to respond to Col. Beach's letter of dismissal. There is no evidence of any affidavit or statement given or made to Beach or Davis which showed or purported to show that the plaintiff's outside employment conflicted in any manner with his duties as a radio-teletype operator for the Florida Department of Highway Safety and Motor Vehicles, Division of Florida Highway Patrol, although the conflict has purportedly been identified by Beach's staff. In addition, the choice to dismiss rather than suspend Scherer, is in violation of the department's own disciplinary guidelines.

On November 10, 1977, the plaintiff, pursuant to the Florida statutory scheme providing for a hearing on dismissal for Career Service Employees, filed an appeal against his dismissal with the Florida Career Service Commission, claiming he had been dismissed without just cause because his dismissal was pursuant to a rule not validly adopted by the department. On November 18, 1977, the plaintiff was notified by Dorothy B. Roberts, Appeals Coordinator, that his appeal had been received and that the Department of Highway Safety and Motor Vehicles had been requested to provide certain information relative to his employment status to enable the Career Service Commission to determine the plaintiff's appeal rights. By letter dated December 8, 1977, signed by Miles R. Dean, from Conley M. Kennison, State Personnel Director, Mr. Scherer was notified that his appeal was in order and would be heard by the Career Service Commission. Scherer's attorneys did not request an expedited hearing.

On or about April 19, 1978, and pursuant to the Administrative Procedures Act, the plaintiff filed a petition for a rule challenge to Policy Number 009 of the Department. On June 28, 1978, the challenged Policy Number 009 on the subject of dual employment and compensation was declared invalid. The Department of Highway Safety and Motor Vehicles did not appeal the invalidation of Policy Number 009 to the District Court of Appeal, and the determination that the Policy Number 009 as applied to plaintiff was an invalid rule became final on July 28, 1978.

By letter dated July 13, 1978, signed by Dorothy B. Roberts, Appeals Coordinator for the Career Service Commission, the plaintiff was notified that his appeal against dismissal would be heard by the Career Service Commission on August 4, 1978. On July 24, 1978, the Department of Highway Safety and Motor Vehicles gave notice to the plaintiff of additional reasons for the plaintiff's dismissal of October 25, 1977.

Section 110.061, Florida Statutes provides that the Career Service Commission may, "in its discretion," order reinstatement for termination of a career service employee "without just cause" without awarding back pay. The Career Service Commission is given ninety days from the date of hearing an appeal within which to issue its written order, either upholding an agency's action or reinstating an employee determined to have been unjustly discharged. § 120.59, F.S. If a state agency appeals an adverse decision of the commission, the commission's order to reinstate is stayed, by operation of the Florida Rules of Appellate Procedure, until after the District Court of Appeal has disposed of the agency's appeal. *See* § 120.68, F.S.; Rule 9.310(b)(2), Fla.R. App.P.

On August 10, 1978, the Career Service Commission entered its order approving a stipulation and agreement between the Department of Highway Safety and Motor Vehicles and the plaintiff, by which plaintiff's dismissal was withdrawn and plaintiff was credited with his sick and annual leave as if no dismissal had occurred, was awarded three thousand four hundred fifty dollars ($3,450.00) for back wages, and was reinstated to his position of employment effective August 4, 1978. Had Scherer continued as a Radio-teletype Operator with the Department of Highway Safety and Motor Vehicles from October 25, 1977 to August 4, 1978, he would have earned six

thousand eight hundred sixteen dollars and fifty-one cents ($6,816.51) from such employment.

Following his dismissal on October 25, 1977, the plaintiff worked odd jobs as an auxiliary deputy. He couldn't meet his bills and was forced to borrow money from his parents and in-laws. He owed money to loan companies and banks and had certain personal property repossessed. Scherer's physical and mental health deteriorated. He lost weight; smoked and drank heavily; slept restlessly, if at all; avoided his friends; and was humiliated and embarrassed by his financial situation and his dealings with creditors. The plaintiff's worst mental depression was in the first six months following the discharge, but he is still troubled by the problems it initiated. Scherer and his wife filed a petition in bankruptcy on December 6, 1979, of which this court takes judicial notice, and were adjudged bankrupt in 1980. They have been unable to get credit since that adjudication and both testified as to their inability to purchase a home.

Plaintiff Scherer reported back to work to the Chief of Radio-teletype Operations, W. A. Hagerty, in Pensacola on August 4, 1978, the same day as his Career Service Commission hearing in Tallahassee. On August 7, 1978, Chief Hagerty called plaintiff from his work area and accompanied him to Sgt. Clark's office. Clark inquired as to Scherer's intentions with the FHP and Scherer informed him that he was planning to apply for a trooper's position. Clark advised Scherer that he would not recommend the plaintiff for a trooper's position because in his opinion Scherer would not make a good trooper, having failed to obey an order and having won his appeal only because of a "technicality."

On August 18, 1978, plaintiff requested that Chief Hagerty allow him to take a week of annual leave. At the time of the request, Chief Hagerty said he would approve plaintiff's leave, but when plaintiff checked twelve days later to see if his request had been given official approval, Hagerty said he would have to check with Sgt. Clark. Later that day, Hagerty informed Scherer that Sgt. Clark and Lt. Wiggins had no written proof that Scherer had annual leave accumulated. Plaintiff requested they call the departmental personnel office in Tallahassee to verify his leave and Hagerty said verification would have to be written. Plaintiff himself phoned personnel, requesting that the director contact Capt. Sconiers regarding his accumulated leave. A short while later he got a call from Hagerty advising his leave had been approved.

On September 1, 1978, Chief Hagerty informed plaintiff that his shift had been changed so that another operator could be given Saturdays and Sundays off. This resulted in Scherer having to rotate to the 11:00 p. m. to 7:00 a. m. shift more frequently than he would ordinarily. The midnight shift was considered onerous duty.

On September 11, 1978, plaintiff became ill while on duty and notified his corporal who came about an hour later and took Scherer to the hospital. Two days later, while Scherer was recovering from the bout with kidney stones, Chief Hagerty came to the hospital with a State of Florida employment application form for Scherer to fill out. Scherer refused to do so from memory and responded that it would have to wait until he could obtain a copy of his original application, which was on file in Tallahassee, to make sure that the second application was completed accurately. Plaintiff reported these incidents of August 7, August 30, September 1 and September 13 to Capt. Sconiers by letters, copies of which were also sent to Lt. Wiggins and Col. Beach, requesting that Clark and Hagerty be disciplined for harassment. Plaintiff testified that there were additional incidents continuing up to January 11, 1979, but that he got tired of writing letters to no avail.

Capt. Sconiers explained the incidents of the leave time and the application as caused by the necessity to update Troop A's records following Scherer's reinstatement. As soon as plaintiff's leave was verified, his request was granted; the employment ap-

plication was thought to be necessary to get Scherer back on the payroll. However, Clark and Hagerty were apparently less than cooperative to Scherer in getting these "housekeeping" measures accomplished.

There is no evidence of any immediate response on the part of Col. Beach to plaintiff's letters charging harassment. Capt. Sconiers, however, advised Sgt. Clark that he had been wrong to talk to Scherer as he had about Scherer's aspirations to be a trooper and Lt. Wiggins told Sgt. Clark much the same thing. Lt. Wiggins also advised Chief Hagerty that he shouldn't change one operator's shift to accommodate another; that both should agree to any change. Lt. Wiggins advised both Hagerty and Clark to forget the past and leave the plaintiff alone, but Clark admitted he was of the "old school" and thought one should follow instructions without question. Wiggins and C. P. Anthony, the chief dispatcher, both testified that Hagerty and the plaintiff had a personality conflict. Although there is no evidence that an order to "hard time" plaintiff came down the chain of command, Clark and Hagerty apparently did exactly that.

In January of 1979, plaintiff and Chief Dispatcher Anthony were working on the 3:00 p. m. to 11:00 p. m. shift when they began to have low band problems. Both men were aware that FCC regulations require that only a qualified engineer repair the radio equipment. Anthony testified that Scherer went to the transmitter room with a fuse and soon the transmitter was working again, although the radio was still not functioning on the receiving side. Sconiers thought either Anthony or Clark advised him that Scherer replaced the fuse and Sconiers sent the information to Tallahassee. Scherer insists the licensed engineer told him to replace the fuse to save the engineer from having to make a trip to Pensacola from Panama City to do so.

Major John Hicks, a deputy inspector in 1979, was sent to Pensacola on January 10 to investigate the trouble with the radio equipment. Hicks sent word to Wiggins and Sconiers that he wanted to meet with the plaintiff. Scherer was told near the end of his shift at 7:00 a. m., to stay for two hours to meet with Major Pitts. The plaintiff left at the end of his shift to take his pregnant wife to her doctor's appointment. Scherer left word that "the Major could shove it." When Major Hicks got to Pensacola and was advised the plaintiff was not waiting to meet with him, he reported this to Col. Beach and a teletype was sent suspending the plaintiff pending "completion of investigation."

By memorandum dated January 11, 1979, the plaintiff informed defendant Beach that he wished to resign his position with the Highway Patrol effective January 13, 1979. By memorandum dated January 12, 1979, defendant Beach advised plaintiff Scherer that Scherer was relieved of duty January 10, 1979, pending an investigation; however, in view of plaintiff's letter of January 11, 1979, his resignation was accepted effective January 13, 1979. The plaintiff's last day on the payroll of the Department of Highway Safety and Motor Vehicles was January 13, 1979. As of that date Scherer was making seven hundred seventy-two dollars ($772) monthly. The plaintiff received all his accrued leave and did not attempt to take an appeal from the second termination of his FHP employment to the Career Service Commission. Scherer asserts he resigned in order to avoid further harassment and to remove a cloud over his employability so that he would be able to accept employment which he had already been offered at the Escambia County Sheriff's Office.

### Conclusions of Law

A. *The effect of the Career Service Commission Settlement.*

■ Initially, this court must consider the effect of the plaintiff's settlement of his Career Service Commission proceeding against the Department of Highway Safety and Motor Vehicles for the official acts of its agents who are individually sued herein. The defendants contend that by entering the settlement with the department, which was subsequently approved by the commis-

sion, and by accepting partial back pay and reinstatement, as well as partial payment of his attorneys' fees, the plaintiff waived his right to relief under 42 U.S.C. § 1983. For such contention, defendants rely on *Strozier v. General Motors Corp.*, 442 F.Supp. 475 at 481 (N.D.Ga.1977) which in turn relies on the pronouncement of the Fifth Circuit United States Court of Appeals against employee windfalls in *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). In view of Scherer's admitted knowing and voluntary settlement of his CSC action, the apparent general philosophy of this circuit expressed en banc in *Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981), and the above-cited interpretation of Footnote 15 of *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 at 160 (1974), defendants' argument for waiver of plaintiff's statutory rights in this instance is initially persuasive.

In the absence of a settlement containing express waiver of Scherer's § 1983 claims, however, this court finds its decision on this issue to be controlled by the Fifth Circuit's latest and most specific treatment of the settlement issue in *Strozier v. General Motors Corp.*, 635 F.2d 424 at 426–7 (5th Cir. 1981). In affirming the district court's finding of waiver in *Strozier*, the Fifth Circuit reiterated its earlier pronouncement:

> In no respect does . . . *Gardner-Denver* support the assertion that an aggrieved employee who freely settles his or her unliquidated demand with the employer or the union may reciprocate by suing the same defendant at a later date on the same cause of action, merely because the employee grows dissatisfied with the payment for which he or she settled.

*United States v. Allegheny-Ludlum Industries, Inc., supra* at 858.

The court then proceeded to base its affirmance on the fact that Strozier had accepted settlement of a grievance action in which the remedy sought and settled was the precise remedy sought in the later lawsuit, which was held to be barred with respect to such claims. *Strozier v. Gen. Motors Corp., supra* at 426–7. Unlike Strozier, plaintiff Scherer has specifically pled for additional specialized relief in this action which could not have been afforded in the Career Service Commission proceeding, *i.e.* declaratory relief, additional compensatory damages, and exemplary damages.

The Fifth Circuit's *Strozier* opinion thus controls this court's holding that the claim plaintiff Scherer has herein asserted for unrecovered wages lost by his termination of October 20, 1977 and subsequent unemployment until August 4, 1978 and any claim for injunctive relief for any violations of due process attendant to that termination have been fatally compromised by his acceptance of partial back pay and reinstatement in the CSC settlement.[2] Plaintiff's claims for compensatory damages not recoverable in a Career Service Commission proceeding, his claims for exemplary damages, and his claim for declaratory relief have not been waived.

B. *Section 110.061, Florida Statutes, and Due Process.*

■ As a permanent career service employee of the State of Florida, Scherer had a recognized property interest in his employment. § 110.061, F.S.; Op.Atty.Gen. 075–94; *Prince v. Lewis*, TCA 75–149 (N.D. Fla. December 28, 1978); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). His dismissal from such employment was a deprivation of that property interest. Scherer's dismissal by defendants Davis and Beach constituted state action for which legitimate governmental concern was asserted. Thus, the four essential elements which must be met for the

---

**2.** Although back pay is not guaranteed a Career Service Employee found by the commission to have been unjustly discharged, § 110.-061, F.S., Scherer's acceptance of partial backpay in settlement must be held to bar any further backpay award he might be able to prove herein in accordance with the Fifth Circuit's *Strozier* and *U.S. v. Allegheny-Ludlum* decisions.

Due Process Clause of the Fourteenth Amendment to apply are present in this case. See *Craig v. Carson*, 449 F.Supp. 385, 390 (M.D.Fla.1978).

■ Because the scope of those rights redressable under 42 U.S.C. § 1983 is identical to the "centerpiece" of constitutional rights guaranteed by the Fourteenth Amendment, the necessary elements for a § 1983 claim, (1) conduct by a defendant under the authority of state law and (2) deprivation of a plaintiff's constitutional rights by that conduct, have also been established herein if Scherer's due process rights were violated. *Mitchum v. Foster*, 407 U.S. 225, 238–9, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972); *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961); *Morgan v. Odom*, 552 F.2d 147, 148 (5th Cir. 1977); *Sullivan v. Brown*, 544 F.2d 279, 284 (6th Cir. 1976).

In determining whether the procedures afforded plaintiff comported with the dictates of the Fourteenth Amendment, this court recognizes that the United States Supreme Court has consistently held that an individual is entitled to some sort of procedural protection before being deprived of a property interest. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Board of Regents v. Roth, supra*. The concept of due process is a flexible one. *Morrisey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Hannan v. Larche*, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960); *Hicks v. Dobbs*, 612 F.2d 577 (5th Cir. 1980).

■ The fundamental requirement of due process is "the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). The purpose of this requirement is not only to ensure the abstract concept of fair play, but also to prevent the arbitrary deprivation of property rights. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The opportunity to be heard should be granted at a meaningful time and in a manner which is appropriate to the nature of the situation. *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1950).

It "must be tailored to the capacities and circumstances of those who are to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 268–9, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970).

■ Determination of whether due process requires an evidentiary hearing prior to the deprivation of a property interest requires analysis of such factors as (1) the nature of the private interest affected; (2) the risk of an erroneous deprivation of a property interest; (3) the probable value of substitute or additional procedural safeguards; and (4) the governmental interest that substitute or additional procedures would affect. *Mathews v. Eldridge, supra; Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977).

The formula in *Mathews* calls for a balancing of the government's interest in the maintenance of an employee's efficiency and discipline against the plaintiff's interest in keeping his public employment pending an evidentiary hearing. In *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), a majority of the justices found that (1) a federal statute guaranteeing continued employment absent cause for discharge confers a legitimate claim of entitlement constituting a property right under the Fifth Amendment; (2) for an employee to be deprived of a protected property interest in continued employment, an evidentiary trial-type hearing is necessary at some stage of the proceeding; and (3) a pre-termination hearing is not required for nonprobationary employees in the competitive civil service, since the Lloyd-LaFollette Act, 5 U.S.C. § 7501, provides other procedural safeguards in lieu of a pre-dismissal evidentiary hearing, which safeguards represent a reasonable accommodation of competing interests.

■ Section 110.061, Florida Statutes (1977) contains no requirement of a pre-termination hearing and none was provided Scherer. Of course, *Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir. 1976), vacated on other grounds 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 114 (1978), on remand 578 F.2d

1167 (1978) makes it clear that a full evidentiary hearing prior to employment termination is not required. The balance which is struck must minimize the risk of wrongful termination while not requiring elaborate pre-termination proceedings which would burden the governmental function. *See Board of Regents v. Roth, supra,* 408 U.S. at 569 n.7, 92 S.Ct. at 2705 n.7. However, it is not constitutionally sufficient to grant a due process hearing following termination with nothing more. The law requires that

> Where a governmental employer chooses to postpone the opportunity of a non-probationary employee to secure a full-evidentiary hearing until after dismissal, risk reducing procedures must be accorded. These must include, prior to termination, written notice of the reason for termination and an effective opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision (footnotes omitted).

*Thurston v. Dekle,* 531 F.2d at 1273.

When a state's interest justifies action after only summary informal proceedings, the full post-termination hearing "must be available *promptly* after the temporary deprivation occurs." (Emphasis in original; citations omitted.) *Barry v. Barchi,* 443 U.S. 55, 72, 99 S.Ct. 2642, 2653, 61 L.Ed.2d 365, 380 (1979).

Section 110.061, Florida Statutes (1977) and its contemporary implementing rules do not require written notice of the reasons for termination, nor is any provision made for the effective confrontation of the termination decision maker prior to termination. Indeed, the pretermination protections provided by the statute and rules fall far short of those found inadequate in *Thurston. See Glenn v. Newman,* 614 F.2d 467, 472 (5th

Cir. 1980). Further, the post-termination hearing process does not assure the requisite promptness.

With respect to Scherer's termination the procedures followed by defendants Beach and Davis were inadequate. The plaintiff did not have an effective opportunity to rebut the claim of conflict between his outside employment and his duties for the FHP or to dispute prior to the termination decision whether the pursuance of dual employment constituted cause for dismissal. Scherer was given written notice of dismissal along with notice of the stated reason. No effective opportunity to present oral or written argument to Ralph Davis or Col. Beach, the ultimate decision maker, was ever provided. Plaintiff was not offered the prompt hearing and prompt disposition of his appeal from the termination decision which is mandated by *Barry v. Barchi* and prior cases. His attorneys' failure to move the commission for an expedited hearing, even had they known of the possibility of such scheduling relief, does not mitigate the fact that the statutorily-created appeal process is not sufficiently prompt to provide adequate due process.[3]

█ Section 110.061, Florida Statutes (1977) has been previously held to be constitutionally deficient because it provides that the commission may order reinstatement for wrongful termination without awarding back pay, a decision which would itself amount to a due process violation. *See Casines v. Murchek, et al.,* TCA 78–820, p. 8 (N.D.Fla. January 13, 1981).

█ Based on his October 24, 1977 termination, plaintiff is entitled to a declaration that Section 110.061, Florida Statutes (1977) and its implementing rules are unconstitutional insofar as (1) they fail to mandate pre-termination procedures which safeguard the rights of employees, (2) they fail to provide a prompt post-termination hear-

---

**3.** Granting a motion for expedited hearing is apparently within the discretion of the commission. Thus, failure to request expedited hearing cannot be held to constitute acquiescence in the delay in the appeal process created by Flor- ida Statute. The notion that one must request expedited hearing in hopes of obtaining minimal due process only points out the absence of minimal due process in the standard statutorily-created process.

ing and (3) they fail to guarantee back pay to an employee determined to have been dismissed without just cause.

■ Plaintiff's suspension on January 10, 1979, pending "completion of an investigation" into destruction of state property was accomplished by means of admittedly minimal written notice, i.e. Col. Beach's teletyped message. Considering all of the circumstances, such suspension did not offend due process requirements, due process being a flexible concept. (*See* discussion, *supra* at 13–14). Scherer's refusal to cooperate with the investigation and his January 11, 1979 voluntary and knowing resignation from his FHP employment caused the department to abandon the investigation and any subsequent disciplinary action based upon it. This court holds that Scherer's resignation, which he submitted only after getting agreement that the department would "drop it all in Tallahassee," constituted a waiver of his rights of appeal to the Career Service Commission. *Cf. State of Florida Dept. of Transportation v. State of Florida Career Service Commission*, 366 So.2d 473 (Fla. 1st DCA 1979). A knowing and voluntary resignation waives any right to the procedural protections to which an employee would otherwise be entitled. *Van Arsdel v. Texas A & M University*, 628 F.2d 344, 345 (5th Cir. 1980); *Stewart v. Bailey*, 556 F.2d 281, 285–86 (5th Cir. 1977). The motion of defendants Blakemore and Beach for a directed verdict, ruling on which was deferred at trial, is granted with respect to Scherer's claims for back pay and injunctive relief based on his January 13, 1979 separation from his Career Service employment.

C. *Infringement of Plaintiff's Liberty Interest.*

■ The court finds no merit to plaintiff's contention that he had a liberty interest in his secondary employment which was infringed by the actions of defendants Beach and Davis by their denial, without hearing, of permission to work a second job. *See Meachum v. Fano*, 427 U.S. 215 at 224, 226–7, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236

at 242–3, 96 S.Ct. 2543 at 2547, 49 L.Ed.2d 466 (1976).

■ Plaintiff has advanced another due process argument, claiming under 42 U.S.C. § 1983 a denial of fundamental due process by stigmatization, that is, an injury to reputation, good name and integrity as the result of the termination of his employment. Not every defamation of an individual by the government is constitutionally protected as a liberty interest. Such a liberty interest can arise only in specific contexts and is dependent upon a special relationship between the individual and the government. The Supreme Court has held that in the public employee context, a liberty interest arises if an individual has been terminated in a manner "that might seriously damage his standing and association in the community" or foreclose "his freedom to take advantage of other employment opportunities." *Board of Regents v. Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707. *See Dennis v. S & S Consolidated Rural H. S. Dist.*, 577 F.2d 338, 340 (5th Cir. 1978); *Kaprelian v. Texas Woman's University*, 509 F.2d 133, 137 (5th Cir. 1975).

■ One's concern for his reputation in the public employment context, without a tangible interest in that employment, is not sufficient to invoke the due process clause. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The Fifth Circuit terms that requirement "stigma plus", so that an individual must be "stigmatized in connection with a denial of a right or status previously recognized under state law." *Dennis, supra*, 577 F.2d at 341. As discussed *supra*, Scherer has shown a property interest sufficient to invoke procedural due process. Yet, in the governmental employee context,

[i]t is the individual's status as a government employee and not his property interest in continued employment which furnished the "plus" that raises reputation to the level of a constitutionally protected liberty interest.

*Dennis, supra*, 577 F.2d at 343. Finally, plaintiff must have established that the

stigmatizing fact was "substantially false." *Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977); *McElwee v. Todd*, 581 F.2d 1182 (5th Cir. 1978). Scherer has not presented evidence sufficient to establish his claims of stigmatization.

■ The court further finds no evidence that the incidents of harassment that plaintiff experienced following his reinstatement with the FHP were in any way orchestrated or directed by defendants Beach and Davis. In accordance with the holdings of *Rizzo v. Goode*, 423 U.S. 362 at 370–1, 96 S.Ct. 598 at 603–04, 46 L.Ed.2d 561 (1976); *Duchesne v. Sugarman*, 566 F.2d 817 at 831 (2nd Cir. 1977); and *Wanger v. Bonner*, 621 F.2d 675 at 680–1 (5th Cir. 1980), this court grants the defendants' motion for a directed verdict, with respect to plaintiff's claims of infringement of a liberty interest and his claims of denial of his right of privacy. In all other respects, the motion for a directed verdict is denied. *See* 5 J. Moore, *Federal Practice* ¶ 50; 2[1] (2d ed.).

### D.  *Qualified Immunity.*

■ As public officials, defendants Davis and Beach enjoy a qualified immunity which limits their liability for damages. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cruz v. Beto*, 603 F.2d 1178 (5th Cir. 1979). That immunity can be lost if the constitutional rights allegedly infringed by the defendants were "clearly established" at the time of the defendants' challenged conduct; if defendants knew or should have known of those rights and if they knew or should have known that their conduct violated the constitutional norm. *Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975); *Cruz v. Beto, supra* at 1183.

The Supreme Court's decisions in *Board of Regents v. Roth, supra* and *Perry v. Sinderman, supra* issued in 1972, with *Arnett v. Kennedy* following in 1974. The Attorney General of the State of Florida rendered an opinion in 1975 that the "terminated for cause" provision of Section 110.-061, Florida Statutes, created a property interest in their jobs for permanent Career Service employees and that such property interest was protected by the Due Process Clause of the Fourteenth Amendment. As of 1975, all that was arguably unsettled was exactly what procedures would protect that interest. This remaining question was answered with the decision in *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1976) on May 20, 1976. The petition for writ of certiorari in *Thurston v. Dekle* was not granted until June 26, 1978 and only that portion of the case affected by the Supreme Court's decision in *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) was vacated. *Thurston v. Dekle*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), on remand 578 F.2d 1167 (5th Cir. 1978). *See also Bundy v. Rudd*, 581 F.2d 1126 at 1131, n.2 (5th Cir. 1978); *Glenn v. Newman*, 614 F.2d 467 at 472 (5th Cir. 1980). In the face of the above-cited decisions, the law with regard to pre-termination procedures was clearly established prior to this court's ruling in *Prince v. Lewis*, TCA 75–149 (N.D.Fla. December 8, 1978).

Plaintiff Scherer's due process rights were clearly established at the time of his October 24, 1977 dismissal from the FHP and defendants Beach and Davis, as officials charged with the responsibility of making dismissal decisions for the Department of Highway Safety and Motor Vehicles reasonably should have known that their failure to provide any pre-termination procedure violated plaintiff's constitutional rights. Thus, although this court finds no evidence of malicious intention on the part of defendants Beach and Davis, it holds that their actions cannot reasonably be characterized as being in good faith. *See Wood v. Strickland*, 420 U.S. 308 at 322, 95 S.Ct. 992 at 1000, 43 L.Ed.2d 214 (1975); *Bogard v. Cook*, 586 F.2d 399 at 411–12 (5th Cir. 1978). Defendants Beach and Davis are thus held to be liable for the compensatory damages which plaintiff has proven on claims not compromised by his settlement with the department. Further, because this court has found that the dismissal decision

of Beach and Davis violated the department's own disciplinary guidelines, the court finds exemplary damages to be appropriate.[4]

### E. *Damages.*

As earlier held, plaintiff may not recover additional lost wages from the period of unemployment following the October 20, 1977 discharge until his reinstatement on August 4, 1978, having settled that claim in his Career Service Commission hearing. Neither may he recover herein for the unrecompensed attorney's fees incurred in that proceeding, because the commission's award of a reasonable attorney's fee was a part of his settlement in the prior proceeding.

As damages for his physical and mental pain and suffering following the October 1977 discharge, the court hereby awards one hundred dollars ($100.00) a week for his forty-two (42) weeks of unemployment, or a total of four thousand two hundred dollars ($4200.00).

Although plaintiff seeks damages from his adjudication of bankruptcy, the court is unable to view the bankruptcy as directly and causally connected to plaintiff's 1977 termination, the petition having been filed at the end of 1979, after plaintiff had been reinstated and employed with only the interruption of a matter of days between his second job separation from the highway patrol and his employment with the Escambia County Sheriff's Office. In the absence of plaintiff's proof of causal connection between the 1977–78 unemployment and the 1980 bankruptcy, this court denies plaintiff's request for damages measured by the effects of his having been adjudged bankrupt.

The court awards exemplary damages against Col. J. E. Beach and Ralph Davis at the rate of two thousand five hundred dollars ($2500.00) each, for a total exemplary damage award of five thousand dollars ($5000.00) to plaintiff.

### ORDER

In accordance with all of the foregoing, it is ORDERED AND ADJUDGED:

1. Plaintiff's claims herein for declaratory relief, compensatory relief other than lost wages, and punitive damages based on his October 20, 1977 termination from Career Service employment with the State of Florida are not barred by virtue of voluntary and knowing settlement of his Career Service Commission proceeding against the Department of Highway Safety and Motor Vehicles.

2. Section 110.061, Florida Statutes (1977) and its implementing rules are unconstitutional insofar as (1) they fail to mandate pre-termination procedures which safeguard the rights of employees, (2) they fail to provide a prompt post-termination hearing, and (3) they fail to guarantee back pay to an employee determined to have been dismissed without just cause.

3. Defendants' motion for directed verdict is granted with respect to plaintiff's claims in Count I of infringement of a constitutionally recognized liberty interest and with respect to all of plaintiff's claims in Count II.

4. Defendants Ralph Davis and Col. J. E. Beach are not entitled to the qualifying good faith immunity defense from liability for plaintiff's damages from his October 1977 termination from employment, the law with regard to pre-termination procedural due process having been settled by the time of their actions.

5. Plaintiff is entitled to four thousand two hundred dollars ($4200.00) in compensatory damages for his mental and physical pain and suffering.

---

4. These damages should not be considered PUNITIVE damages, which would have been awarded if the defendants' actions demonstrated malicious intention. They are, rather, EXEMPLARY damages, awarded solely on the basis of defendants' failure to follow the department's disciplinary guidelines. Although

Beach and Davis evidently consulted both the department's personnel director and the department's legal counsel before making the final dismissal decision, Beach and Davis are the officials charged with responsibility for the official action of dismissal.

6. Exemplary damages are awarded to plaintiff because of the failure of Ralph Davis and Col. J. E. Beach to follow the disciplinary guidelines of the Department of Highway Safety and Motor Vehicles in making their decision of October 24, 1977 to terminate G. S. Scherer from his employment with the Florida Highway Patrol.

7. Plaintiff is entitled to twenty five hundred dollars ($2500.00) in exemplary damages from Col. J. E. Beach and twenty five hundred dollars ($2500.00) in exemplary damages from Ralph Davis.

8. Plaintiff's suspension of January 10, 1977 from Career Service employment, pending investigation of a charge of destruction of state property, did not offend the requirements of the Due Process Clause of the Fourteenth Amendment.

9. Plaintiff's voluntary and knowing resignation of his Career Service employment, based on agreement of the Department of Highway Safety and Motor Vehicles to abandon its investigation of charges against him of destruction of State property, constituted a waiver of his right of appeal pursuant to Section 110.061, Florida Statutes (1978 Supp.).

10. Plaintiff is entitled to his attorneys' fees and costs for litigation of the claims herein which were not barred by the prior settlement of his Career Service Commission proceeding. Plaintiff has 10 working days from the date of this order to submit affidavits on attorneys' fees and costs to defendants. Defendants have 10 working days in which to respond. Following such response, the parties have 10 working days in which to negotiate a settlement of the amount to be awarded. If settlement cannot be made, the court will entertain a motion for said award.

11. The Clerk of this Court will enter judgment accordingly.

## ORDER AMENDING JUDGMENT

Before the court is defendants' motion to alter judgment (Document 112) to which plaintiff responded in Document 114. Defendants have alleged error in four areas of the memorandum opinion and order (Document 108). Each point is discussed below.

### Qualified Immunity

The language of 42 U.S.C. § 1983 is absolute and unqualified: "Every person who, under color of any statute . . . [or] custom . . . , of any State . . . , subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." Although the statute itself embodies no immunities, courts have created a qualified immunity for public officials whose positions require the exercise of discretion in the performance of their duties. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The *Scheuer* Court held:

> [A] qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct."

*Id.* at 247–48, 94 S.Ct. at 1692.

The next term the Supreme Court enunciated a two-pronged immunity standard which contained an objective test requiring reasonable grounds for the official's belief in the legality of the challenged conduct and a subjective test for good faith. *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The criterion for the objective prong is whether the official knew or reasonably should have known that the action he took within his sphere of official responsibility violated a basic, unquestioned constitutional right of his charge. *Id.* at 322, 95 S.Ct. at 1000. In the subjective context, the public official will be found not to have acted in good faith if

he took the action with the malicious intention to cause a deprivation of a constitutional right. *Id.*

In my memorandum opinion and order (Document 108) in this case, dated July 15, 1981, I found that defendants Beach and Davis lost their qualified immunity based on the objective test. Reasoning that *Thurston v. Dekle*, 531 F.2d 1264 (5th Cir. 1967) settled the exact procedures to protect an employee's property interest in his job, this court determined that Scherer's due process rights were clearly established at the time of his October 24, 1977 dismissal from the Florida Highway Patrol. Five days later, however, the Fifth Circuit affirmed Judge Higby's ruling in *Weisbrod v. Donigan*, TCA 79–813 (N.D.Fla.1980), 651 F.2d 334 (5th Cir. 1981). Unlike my conclusion, Judge Higby found that "[t]he right of a permanent state employee to a pre-termination conference was established as the result of a series of decisions which were rendered in late 1978." TCA 79–813, Document 46, p. 8. Judge Higby's *Weisbrod* opinion specifically rejected the determination that *Thurston* clearly established pre-termination due process procedures. The pertinent actions in *Weisbrod* occurred from June 17, 1977 through June 7, 1978, and yet the Fifth Circuit held that the "defendants did not act in disregard of any well-settled constitutional rights." 651 F.2d at 336.[1] Certainly it cannot be said that the Fifth Circuit was unaware of its own decision in *Thurston*. In fact, Circuit Judge Morgan was on both the *Thurston* and *Weisbrod* panels. Thus, the law of this circuit is that pre-termination due process procedures were clearly established in late 1978; and accordingly that portion of Document 108 inconsistent with that holding must be vacated.

Although the issue of whether a clearly established constitutional right was violated must be resolved against plaintiff, defendants can take little comfort therein. *Wood's* duty to know well-settled constitutional rights only supplements the more general reasonable grounds requirement of *Scheuer*. If an official violates an employee's clearly established constitutional right, it is easier, but not the sole way, to find the official's behavior unreasonable.

■ Plaintiff suggests that this court should adhere to a recent Fifth Circuit decision which held that officials were not entitled to qualified immunity when they violated clearly established state law. *Williams v. Treen*, 671 F.2d 892 (5th Cir. 1982). This court finds *Williams* partially persuasive. Significantly, the Fifth Circuit recognized the general "reasonable grounds" requirement enunciated in *Scheuer* when no well-settled constitutional right existed at the time of the challenged conduct. *Id.* at 897–900. This court, however, declines to follow the holding that "[i]f an official's conduct contravenes his own state's explicit and clearly established regulations, a subjective belief in the lawfulness of his actions is *per se* unreasonable." *Id.* at 899. Instead, this court is of the view that if an official violates his agency's explicit regulations, which have the force of state law, it is evidence that his conduct is unreasonable. The court, however, must consider the totality of the circumstances. *Scheuer*, 416 U.S. at 247–48, 94 S.Ct. at 1692.

In the instant case, the Florida Highway Patrol adopted personnel rules and regulations which provided:

> Upon receiving a report of … a violation of Department or Division rules and regulations …, the Director shall order a complete investigation to determine the true facts concerning the circumstances surrounding the alleged offense. The completed investigation report will also contain a written statement made by the employee against whom the complaint was made. If after a thorough study of all information concerning the violation, the Director decides that a … dismissal will be in order, he will present the em-

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted Fifth Circuit precedent.

ployee in writing with the reason or reasons for such actions.

General Order No. 43 § 1.C (September 1, 1977). This order was promulgated pursuant to section 120.53(1)(a) of the Florida Statutes, *see* Chapter 15B–11.14, Florida Administrative Code, and has the effect of statutory law. *McDonald v. Department of Banking and Finance*, 346 So.2d 569 (Fla. 1st DCA 1977).

■ General Order 43 clearly established an employee's right to a complete investigation of the charge and an opportunity to respond in writing. Scherer was accorded neither of these rights fixed by the department. No emergency situation existed whereby the department or society would have been harmed if Scherer was given due process. Beach and Davis followed procedures contrary to the department's rules and regulations. Defendants, therefore, are not entitled to qualified immunity because their belief in the legality of the challenged conduct was unreasonable.

■ If this departmental order had not been adopted just prior to Scherer's dismissal, no damages of any kind could be awarded. Even though defendants Beach and Davis acted with no malicious intent in their dealings with Scherer, they should be bound by their Department's own orders and held accountable for not affording plaintiff due process. Thus, even though Scherer is not entitled to recover damages based on the theory that *Thurston v. Dekle* clearly established due process procedures, he may recover compensatory damages for defendants' failure to comply with the department's procedures in regard to his dismissal. Scherer, however, is not entitled to exemplary or punitive damages for insufficient due process procedures prior to his dismissal because I cannot find that defendants' conduct in that regard was so egregious as to warrant an award of such damages.

### Disciplinary Guidelines and Exemplary Damages

■ This court found that the choice to dismiss rather than suspend Scherer violat-

ed the department's disciplinary guidelines, and therefore awarded exemplary damages. Upon reconsideration that finding is incorrect. The regulations state "[i]n no case will these guidelines be binding on the Department as the disciplinary action it shall take." General Order No. 43 § 2.1C (September 1, 1977). They further provide "[t]here may be extenuating circumstances in some cases where more severe . . . disciplinary action would be in order, even on first offense." *Id.* § 2.1D(1). The conclusion defendants violated departmental guidelines is not supported by the evidence; therefore, the portion of this court's order awarding exemplary damages is vacated. Because there will be no award of exemplary damages, this order will not address the merits of defendants' contention that the court erred by its distinction between exemplary and punitive damages.

### Declaratory Relief

This court's memorandum opinion and order held:

Section 110.061, Florida Statutes (1977) and its implementing rules are unconstitutional insofar as (1) they fail to mandate pre-termination procedures which safeguard the rights of employees, (2) they fail to provide a prompt post-termination hearing, and (3) they fail to guarantee back pay to an employee determined to have been dismissed without just cause.

Document 108, p. 23.

■ The Declaratory Judgment Act applies only in "a case of actual controversy," 28 U.S.C. § 2201, and there is no actual controversy if a matter has become moot. *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). Moreover, there must be a controversy at the time the court acts. *Id.*; *see also Socialist Labor Party v. Gilligan*, 406 U.S. 583, 92 S.Ct. 1716, 32 L.Ed.2d 317 (1972).

■ The legislature repealed section 110.061 of the Florida Statutes in 1979. During that same session, the legislature

enacted section 110.227(5)(a) of the Florida Statutes which provides for constitutionally sufficient pre-termination procedures.

Additionally, defendants correctly note that by order dated June 13, 1980 (Document 72) this court held that plaintiff had no standing to complain of the unconstitutionality of Chapter 110, Florida Statutes on the basis of its failure to guarantee back pay for a wrongfully dismissed employee because Scherer had in effect settled his claim prior to his Career Service Commission hearing. Accordingly, that portion of the memorandum opinion and order declaring the statute unconstitutional for its failure to mandate pre-termination procedures which safeguard employees' rights and to guarantee back pay must be vacated.

In accordance with the foregoing, the final order in this case is amended and it is hereby ORDERED AND ADJUDGED:

1. Plaintiff's claims herein for declaratory relief, compensatory relief other than lost wages, and punitive damages based on his October 20, 1977 termination from Career Service employment with the State of Florida are not barred by virtue of voluntary and knowing settlement of his Career Service Commission proceeding against the Department of Highway Safety and Motor Vehicles.

2. Chapter 110, Florida Statutes (1981) and its implementing rules are unconstitutional insofar as they fail to provide a prompt post-termination hearing.

3. Defendants' motion for directed verdict is granted with respect to plaintiff's claims in Count I of infringement of a constitutionally recognized liberty interest and with respect to all of plaintiff's claims in Count II.

4. Defendants Ralph Davis and Col. J. E. Beach are not entitled to the qualified good faith immunity defense from liability for plaintiff's damages from his October 1977 termination from employment.

5. Plaintiff is entitled to four thousand two hundred dollars ($4200.00) in compensatory damages for his mental and physical pain and suffering.

6. Plaintiff's suspension of January 10, 1977 from Career Service employment, pending investigation of a charge of destruction of state property, did not offend the requirements of the due process clause of the fourteenth amendment.

7. Plaintiff's voluntary and knowing resignation of his Career Service employment, based on agreement of the Department of Highway Safety and Motor Vehicles to abandon its investigation of charges against him of destruction of state property, constituted a waiver of his right of appeal pursuant to Section 110.061, Florida Statutes (1978 Supp.).

8. Plaintiff is entitled to his attorneys' fees and costs for litigation of the claims herein which were not barred by the prior settlement of his Career Service Commission proceeding. Plaintiff has ten working days from the date of this amended order to submit affidavits on attorneys' fees and costs to defendants. Defendants have ten working days to respond. Following such response, the parties have ten working days to negotiate a settlement of the amount to be awarded. If settlement cannot be made, the court will entertain a motion for said award.

9. The Clerk of this Court will amend judgment accordingly.