Joseph M. SKOMORUCHA, Plaintiff,

v.

## WILMINGTON HOUSING AUTHORITY and Earl Phillips, Defendants.

### Civ. A. No. 80–447.

United States District Court, D. Delaware.

Dec. 11, 1980.

See also, D.C., 504 F.Supp. 831.

Bayard Marin, and Bruce L. Hudson, of Marin & Hudson, Wilmington, Del., for plaintiff.

Clifford B. Hearn, Jr., Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This is a civil rights action brought under 42 U.S.C. § 1983 by the plaintiff, Joseph M. Skomorucha, against two defendants, the Wilmington Housing Authority and its Executive Director, Earl Phillips. In his Amended Complaint, the plaintiff alleged, *inter alia*, that he was arbitrarily terminated from public employment by the defendants, in violation of his constitutional rights to substantive and procedural due process, equal protection and freedom of speech. This Court, in its Memorandum Opinion of October 30, 1980, granted defendants' motion to dismiss in part, and denied it as to

these counts. Presently before the Court is plaintiff's motion for a preliminary injunction, in which he seeks reinstatement and back pay. A hearing was held, at which three witnesses testified at length. On the basis of the findings set out below, the Court concludes that the motion for a preliminary injunction must be denied.

## I. *Factual Background*

According to the record, the plaintiff was employed by the Housing Authority as Comptroller on July 23, 1979, and was elected Treasurer of the Authority by its Board of Commissioners the following day. The Comptroller, a nonunion employee who reports directly to the Executive Director, is responsible for supervising the day-to-day operations of the Finance Department; the office of Treasurer, on the other hand, is an unsalaried position. *See* PX-10. During the course of the plaintiff's tenure as Comptroller, the Housing Authority had three Executive Directors. The current Director, defendant Earl Phillips, began at the Authority in June, 1980. By July, Phillips had already begun to indicate to the plaintiff his dissatisfaction with plaintiff's work. Phillips did not, however, fill out a personnel evaluation form for the plaintiff on the plaintiff's "year anniversary" at the Authority in July, 1980, as called for by the Authority's regulations, *see* PX-4 at 12, because they had worked together for such a short time. On July 13, Phillips gave the plaintiff specific criticisms of his performance and warned him that he would be dismissed if his work did not improve. On August 20, Phillips summoned the plaintiff to his office, told the plaintiff of his continued dissatisfaction, and offered him the choice of resigning or being terminated. On August 21, the plaintiff told Phillips that he would resign, but only after six more months. Phillips informed him that he was discharged effective August 22. The following day, Phillips gave the plaintiff a memorandum setting out the reasons for his termination, *see* PX-3.

Plaintiff immediately requested a hearing under "Step Three" of the grievance procedure for nonunion employees, *see* PX-4 at 35. Under this procedure, aggrieved employees have a right to a hearing before the Executive Director, in this case the official who had discharged the plaintiff. The hearing was held on September 3, with Phillips acting as hearing officer. At the hearing, Phillips refused to respond to questions from plaintiff's counsel, and stated that the purpose of the hearing was to allow plaintiff to address the points in Phillips's memorandum. *See* PX-6 at 16. Plaintiff presented Phillips with a memorandum in reply, *see* PX-5, and the hearing was adjourned. On September 8, Phillips notified plaintiff of his decision to affirm the dismissal, *see* DX-1, and plaintiff took an appeal to the Board of Commissioners, as provided for in the grievance procedure, *see* PX-4 at 35. On October 20, the Board conducted a hearing on the appeal, at which both Phillips and the plaintiff testified and were questioned by Board members and plaintiff's counsel. The Board unanimously affirmed the termination.

## II. *Standard for Grant of Injunction*

In deciding whether to grant a preliminary injunction, the Court must weigh whether: (1) the movant is likely to prevail on the merits; (2) the movant will suffer irreparable injury if relief is not granted; (3) the opposing party will be injured if relief is granted; and (4) the public interest will be affected by granting relief. *See Fitzgerald v. Mountain Laurel Racing, Inc.*, 607 F.2d 589, 600-601 (3d Cir. 1979). Though these factors need not uniformly favor the movant in order for the Court to grant the injunction, *see Constructors Association v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978), the plaintiff must either show probable success on the merits and a risk of irreparable injury, or raise serious questions going to the merits and show that the balance of equities tips sharply in his favor. *Alaska Interstate Co. v. McMillian*, 402 F.Supp. 532, 540 (D.Del.1975).

## A. *Likelihood of Success on the Merits*

Plaintiff asserts that his discharge by the Housing Authority violated his Fourteenth

Amendment rights to substantive and procedural due process, and to equal protection of the laws. In addition, he claims that he was impermissibly terminated for exercise of his First Amendment right of free speech. Each of these allegations will be considered in turn.

■ The plaintiff is unlikely to prevail on his argument that the termination was arbitrary and capricious and denied him substantive due process. It is well established that, "[u]nlike a civil service system, the Fourteenth Amendment to the Constitution does not provide job security, as such, to public employees." *Illinois State Employees Union v. Lewis*, 473 F.2d 561, 567–68 (7th Cir. 1972), *cert. denied*, 410 U.S. 928, 943, 93 S.Ct. 1364, 1370, 35 L.Ed.2d 590, 609 (1973) (Stevens, J.). In reviewing whether public employment decisions comport with substantive due process, the Court is restricted to determining if the employer has exercised his discretion in an arbitrary fashion; the Court's role is not to second-guess the administrator. *See Chung v. Park*, 514 F.2d 382, 387 (3d Cir.), *cert. denied*, 423 U.S. 948, 96 S.Ct. 364, 46 L.Ed.2d 282 (1975). In the instant case, there is uncontroverted evidence that on a number of occasions, the plaintiff failed to perform tasks within his area of responsibility. For example, the plaintiff failed to present a monthly report to the Board of Commissioners at its June, 1980 meeting, though preparing the report was one of the "principal responsibilities" of the Comptroller. *See* PX–10. The plaintiff did not deny that he was inadequately prepared for the meetings that were central to the new budgetary process instituted by Phillips. *See* PX–5, no. 23. Similarly, the plaintiff failed to provide the Board with financial data as promised. *See* PX–3, no. 10; PX–5, no. 10. These incidents are obviously relevant to the plaintiff's performance as Comptroller, and they provide sufficient evidence to prove that the termination was not arbitrary. Therefore the plaintiff is unlikely to prevail on the substantive due process claim.

■ The plaintiff has a stronger case as to procedural due process. The plaintiff asserts that both the September 3 and October 20 hearings were procedurally defective in various respects. The Court need look no further than the timing of these hearings to find that the plaintiff is likely to succeed on this claim. Under *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court must balance three factors, the interest at stake for the plaintiff, the Authority's interest, and the risk of inaccuracy in the Authority's action, in determining whether due process required a pre-termination hearing. *See id.* at 335, 96 S.Ct. at 903. In view of the fact that the additional burden on the Housing Authority would be minimal if it were to hold the "Step Three" hearing before rather than after an employee's termination, and in view of the employee's considerable interest in not being wrongfully terminated, there is a very strong argument that the plaintiff should have been afforded a pre-termination hearing. *See, e. g., Skehan v. Board of Trustees of Bloomsburg State College*, 501 F.2d 31, 38 (3d Cir. 1974), *vacated on other grounds*, 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975); *Hickey v. New Castle County*, 428 F.Supp. 606, 610–11 (D.Del.1977).

■ The plaintiff is not likely, however, to obtain the relief sought here in this connection. A plaintiff whose due process rights were violated is entitled to relief in a § 1983 action only to the extent that he suffered actual injury as the result of the denial of due process. *Carey v. Piphus*, 435 U.S. 247, 97 S.Ct. 1642, 55 L.Ed.2d 252 (1978). In the Court's view, a trier of fact would be likely to find that the plaintiff in this case would have been terminated even had he received a pre-termination hearing. There is no indication in the record that plaintiff would have proffered any explanations or defenses at that stage that were not proffered subsequently, or that he would have met with greater success. Therefore, under the Supreme Court's decision in *Carey*, plaintiff would only be entitled to compensatory damages for emotional distress, but not to reinstatement or back pay. Thus this claim provides no basis on

which the Court can grant the relief sought here. *See Waters v. City of Wilmington,* C.A. No. 78–259 at 6–7 (D.Del. June 27, 1978).

■ In his equal protection claim, the plaintiff alleges that the Housing Authority's use of different grievance procedures for union and nonunion employees deprived plaintiff of the equal protection of the laws as guaranteed by the Fourteenth Amendment. The plaintiff did not argue or offer evidence that the termination was based on race or national origin, despite allegations to that effect in the complaint. Because this case involves neither a suspect classification nor a fundamental right, *see Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976) (no fundamental right to governmental employment), the Court needs only to inquire whether there is a rational basis for the difference in procedures. *Id.* In view of the fact that nonunion, management level employees of the Housing Authority such as the Comptroller serve without formal tenure, it is entirely reasonable that their grievance procedure differ from that of union employees. Therefore the Court finds that the plaintiff is unlikely to prevail on this claim.

Finally, the plaintiff contends that his termination was in part the result of the exercise of his right of free speech. The basis for this allegation is Phillips's memorandum setting out the grounds for dismissal, which stated,

> By your continuing personal, direct contact with Board members, it led to continued confusion.... On countless occasions you and I discussed these matters. It was agreed that you were accountable to the Executive Director on a day-to-day basis, yet you found it still necessary to continue to violate my request and secretly communicate with individual Board members on matters of day-to-day operational items....

PX–3, no. 6. At the hearing, the plaintiff and Phillips agreed that Phillips had told the plaintiff not to contact Board members about routine matters, and had asked him to provide Phillips with copies of any written communications that he did send to the Board. The Chairman of the Board of Commissioners, Kester Crosse, gave plaintiff similar instructions.

■ On this record, the Court holds that the plaintiff is unlikely to make out a violation of his First Amendment rights. Public employees clearly enjoy the protection that the First Amendment extends to speech. *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967). However, the interests of the State may justify some curtailment of the employee's First Amendment rights. *See, e. g., Illinois State Employees Union v. Lewis,* 473 F.2d 561, 572 (7th Cir. 1972), *cert. denied,* 410 U.S. 928, 943, 93 S.Ct. 1364, 1370, 35 L.Ed.2d 590, 609 (1973) (Stevens, J.); *Ruhlman v. Hankinson,* 461 F.Supp. 145, 147 (W.D.Pa. 1978). In a decision reinstating a teacher who had been discharged because he had publicly voiced his views on school policy, the Supreme Court stated, "The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The Court specifically noted that the case did not involve any issue of "maintaining either discipline by immediate superiors or harmony among coworkers." *Id.* at 570, 88 S.Ct. at 1735.

■ The instant case is easily distinguished from *Pickering.* The plaintiff was instructed only not to communicate with the Board as to day-to-day matters, which were clearly not matters of public concern. Moreover, Phillips and Crosse were concerned with discipline, harmony, and efficiency at the Housing Authority in attempting to regulate the plaintiff's contacts with the Board. In light of the history of internal dissension at the Housing Authority, and the efficiency considerations involved, the Court finds that the balance between the employee's rights and the employer's

interests tips in favor of the defendants in this case. *Cf. Schmidt v. Fremont County School District,* 558 F.2d 982, 984 (10th Cir. 1977) (public employee's statements as to school's internal operations not protected by First Amendment). The plaintiff is therefore unlikely to succeed on the First Amendment claim.

*B. Irreparable Injury*

■ The plaintiff contends that the Court's refusal to grant equitable relief in this case will result in irreparable injury to him. He has been unable to obtain other employment, despite his best efforts, and his initial application for unemployment benefits has been denied. However, temporary loss of income does not generally support a finding of irreparable injury, if there is a claim for back pay. *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). Moreover, in cases involving personnel discharges, the showing of injury must be greater than is usually required before a stay will issue. *Id.* at 83–84, 94 S.Ct. at 849–850. The Supreme Court has noted that, except in extraordinary cases, "an insufficiency of savings or difficulties in immediately obtaining other employment ... will not support a finding of irreparable injury, however severely they may affect a particular individual." *Id.* at 92 n. 68, 94 S.Ct. at 953 n. 68. Given that the plaintiff has some savings, *see* DX–7 at 72, the instant case does not come within this exception, and the Court finds that denial of relief will not result in irreparable harm to the plaintiff.

In view of the Court's findings that the plaintiff is unlikely to succeed on any of the claims presented, and that no irreparable injury will result from denying relief, it is unnecessary to reach the issues of how granting relief would affect the defendant and the public interest. *See Constructors Association v. Kreps,* 573 F.2d 811, 815 (3d Cir.1978). The motion for a preliminary injunction is denied. The foregoing Opinion is adopted as the Court's Findings of Fact and Conclusions of Law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.