Floyd ESQUIBEL, Plaintiff,

v.

Stanley H. TORVIK, individually and in his capacity as Director of the Department of Health and Social Services of the State of Wyoming, and Gerald R. Bryant, individually and in his official capacity as Administrator of the Division of Public Assistance and Social Services of the State of Wyoming, Defendants.

No. C83–0301–B.

United States District Court,
D. Wyoming.

Aug. 8, 1983.

Charles E. Graves, Jr., Roger E. McDaniel, Cheyenne, Wyo., for plaintiff.

Vincent J. Horn, A.G. McClintock, Atty. Gen. of Wyo., Allen C. Johnson, Asst. Atty. Gen. of Wyo., Cheyenne, Wyo., for defendants.

## ORDER ON APPLICATION FOR PRELIMINARY INJUNCTION

BRIMMER, District Judge.

This matter having come on regularly for hearing on August 2nd and 3rd, 1983, upon the Plaintiff's Application for Preliminary Injunction; the Plaintiff appearing by and through his counsel, Charles E. Graves, Esq., and Roger E. McDaniel, Esq.; the Defendants appearing by and through their counsel Vincent J. Horn, Esq., A.G. McClintock, Esq., Attorney General for the State of Wyoming, and Allen C. Johnson, Esq., Assistant Attorney General for the State of Wyoming; and the Court having reviewed the pleadings, having considered the testimony and evidence adduced on behalf of the parties and the arguments of counsel, and being otherwise advised in the premises, FINDS AND ORDERS as follows:

The Plaintiff was discharged summarily from his position as a social worker-supervisor for the Laramie County Department of Public Assistance and Social Services (D–PASS) office. No notice of the decision to terminate the Plaintiff, nor opportunity to respond was provided prior to the effective date of the termination. Pursuant to the provisions of the Wyoming Personnel Rules, the Plaintiff has appealed the discharge to the Wyoming Career Services Council. Evidence presented at the hearing in this matter indicates that such appeal will be heard between August 16–19, 1983 and decided within ten (10) days thereafter. Should the Plaintiff prevail in such proceeding, he will be awarded reinstatement and back-pay from the date of the discharge.

The Plaintiff alleges that the procedures used in discharging him from his position in the D–PASS office violated his civil rights under the due process clauses of the 5th and 14th Amendments to the United States Constitution, and requests this Court to order his interim reinstatement pending the outcome of the appeal before the Career Services Council.

In determining whether to grant a preliminary injunction, the Court must weigh the following factors: (1) Whether or not the movant is likely to prevail on the merits; (2) Whether or not the movant will suffer irreparable harm if such relief is not granted; (3) Whether, and the extent to which, the opposing party will suffer injury if such relief is granted; and (4) Whether, and if so how, the public interests will be affected by granting such relief. See *Skomorucha v. Wilmington Housing Authority,* 504 F.Supp. 836, 839 (D.C.Del.1980); *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 600–601, (3rd Cir.1979). While such factors generally require a balancing of competing interests of the parties before the Court, the movant must make an initial showing of likelihood for success on the merits, and of a risk of irreparable injury, or that the equities otherwise favor the movant, before such relief may be granted.

*Likelihood for success on the merits:*

Without deciding the merits in this action, the Court believes that the Plaintiff offered substantial evidence which indicates that the Plaintiff is likely to prevail on the merits. First, the evidence indicates that the Defendants failed to abide by the procedures provided by the Wyoming Personnel Rules in disciplining the Plaintiff. Such rules require that disciplinary measures short of termination be used in the first instance in the absence of flagrant employee misconduct. Termination generally should be reserved until less substantial measures prove ineffective. Evidence presented at this hearing showed that the Plaintiff was summarily discharged over the objection of his immediate supervisor, that no prior disciplinary action had ever been taken against the Plaintiff, and that no direction from his superiors had been given to him as to how to perform his job. The report which served as the basis for the decision to discharge the Plaintiff implicated several employees, and yet only the Plaintiff was singled out for summary discharge. Furthermore, testimony at the hearing indicated that the grounds offered for the summary discharge are not such as are generally referred to as flagrant misconduct, like embezzlement, or theft of

State property, such as would justify summary dismissal in the first instance under the Wyoming Personnel Rules.

Second, the reports which served as the basis for the Plaintiff's discharge trouble the Court in several regards. Plaintiff's Exhibit 4 was described as a confidential report of a special review team formed by the Defendants as the Director and Administrator of D–PASS to review State laws, State policies, and local practices regarding child abuse, neglect and protection to which were attached reports of interviews by a paid consultant who was a member of the team. This report was later purged of "non-public materials" and a final report of the review team was printed. However, Mr. Bryant testified at the hearing that he relied upon the confidential interviews attached to Exhibit 4, and not upon the final report, and concluded therefrom that the Plaintiff was insensitive to his work, and failed to adequately react to cases, that he didn't work over the phone, didn't carry out the laws relating to child protection, and that his relations with, and credibility in, the community put the child abuse delivery system in jeopardy, which justified his immediate summary dismissal.

Mr. Torvik testified that he had a personal phone conversation with the Cheyenne Superintendent of Schools, as well as a verbal report from the review team, on the basis of which he agreed with the decision of Mr. Bryant, relying upon the expertise of the latter.

The review team consisted of nine members, was chaired by an assistant to Mr. Bryant, had two of his staff on it, two county D–PASS employees, a representative of the State Attorney General, a representative of the State Health Department, and a hired private consultant from Denver, Colorado.

Plaintiff's Exhibit 4 consists of one part entitled "Laramie County Report", which describes the duties of the review team, the process used by it, a summary of its findings, and its conclusions and recommendations. To the report were attached exhibits, the final one of which is entitled "Per-

sons testifying at Floyd Esquibel's hearing", listing 18 persons, 3 of which were members of the review team. No summary of their testimony before the review team is included, nor is the date and place of the hearing stated. The Plaintiff testified that he wasn't given any hearing. The Court must conclude that the review team took that testimony in secret, that the Plaintiff was not present at the hearing, and that the 3 members of the review team testified at the hearing, thereby becoming the Plaintiff's prosecutors as well as his jurors. Except for that appendage, the report itself is not derogatory to the Plaintiff. It made many, very reasonable, recommendations for administrative changes in the State and local D–PASS offices, including that of establishing a separate child abuse intake system. One must conclude that this part of the report was concurred in by the members of the team.

But the Solheim interviews contained in Exhibit 4 are another matter. These are dictated summaries of interviews by Solheim of school nurses, psychologists, social workers and counselors, members of "Parents Anonymous", members of the "Laramie County Child Protection Team Members", and "selected others" who are referred to as "professionals", as well as members of the Laramie County Child Protection and Social Service Staff. These were apparently conducted by Solheim, and the other members of the review team were not present nor participating, except to the extent that they themselves may have been interviewed. There is no indication that the other members of the review team concurred in this part of the report.

Aside from the obvious hearsay aspects of these interview reports, even more troubling is the fact that these are nameless accusers, who were not required to take responsibility for their accusations by signing their statements, or at least by permitting the identification of the source of such statements. Indeed, the Solheim interview reports have no greater credibility or reliability than unsigned hate mail.

Moreover, there is a real question in the Court's mind regarding the possibility of bias or prejudice of the paid consultant, Ms. Solheim, and of her evaluation of the local D–PASS staff.

For the Plaintiff to have been fired on the basis of statements of unnamed, unsworn accusers, reported by one whose lack of prejudice was undetermined and might be questioned, with no opportunity to confront his accusers in an open hearing, in conjunction with the other irregularities in the disciplinary procedures used, as mentioned above, may indeed have been arbitrary and capricious action by the Defendants, violative of the Plaintiff's substantive due process rights. See *Komorucha v. Wilmington Housing Authority,* supra. If not explained, (and the Attorney General told the Court that he had refrained from putting on a case on the merits for the Defendants), these considerations would go far to convince the Court that there is a substantial likelihood of success by the Plaintiff on the merits. The Court is not prejudging these matters, since the Defendants did not present their full case; but the Court concludes that Exhibit 4 is a very dubious, shaky basis for peremptory termination of the Plaintiff after 17 years of work for the State.

Concerning the Plaintiff's procedural due process challenge, the Court concludes that the Plaintiff offered substantial evidence which, if unexplained, demonstrates that the Plaintiff has a substantial likelihood of success on the merits. The evidence offered at the hearing tended to show that the Wyoming Personnel Rules were overlooked, if not ignored, in the proceedings leading up to the Plaintiff's summary discharge. Such evidence shows that the Plaintiff received no advance notice of the investigation, nor of the decision that he be terminated. The first notice that he received was in the notice of immediate termination received by the Plaintiff at 4:30 P.M. on Friday, June 3, 1983, the time that he was discharged. Plaintiff therefore received no opportunity to respond to the allegations lodged against him prior to the time that he was discharged.

In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the United States Supreme Court upheld employee termination procedures provided for under the Lloyd-LaFollette Act, 5 U.S.C. Section 7501 et seq. and OEO regulations promulgated thereunder, which provided for only post-termination adversarial hearings in termination of non-probationary employees, stating that such post-termination hearings adequately safeguard the employees' due process rights. However, such procedures are distinguishable from those used herein in that, in the absence of criminal misconduct on the part of the employee, they provided the employee with a pre-termination notice at least 30 days prior to the effective date of the discharge, and allowed the employee to file a written response to such charges prior to his termination. See 5 U.S.C. Section 7513; *Arnett v. Kennedy,* supra at pp. 141–143, 94 S.Ct. at 1638–39. Several federal courts have held that, absent a substantial countervailing State interest, due process requires such pre-termination notice and opportunity to respond, though full adversarial hearings may be postponed until after the termination. See, e.g., *Scherer v. Davis,* 543 F.Supp. 4, 14 (N.D.Fla.1981); *Thurston v. Dekle,* 531 F.2d 1264, 1273, (5th Cir.1974); *Boehning v. Indiana State Employees Ass'n, Inc.,* 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975).

The Tenth Circuit Court of Appeals addressed the constitutionality of the Wyoming Personnel Rules, as applied in that case, in *Johnston v. Herschler,* 669 F.2d 617, (10th Cir.1981). There the Court; while noting that the rules do not provide for a pre-termination adversarial hearing, upheld the Rules against a due process challenge, holding that, under the circumstances of that case, the detailed procedures for post-termination hearings adequately protected the Plaintiff's due process rights. However, *Johnston v. Herschler* is distinguishable on several grounds. There it was not alleged that the Personnel Rules were ignored or violated in the discharge of the Plaintiff. The Plaintiff was discharged only after he ignored repeated warnings

and orders from his superiors, which culminated in a refusal to comply with a direct order from the Governor himself. The facts in that case clearly indicated that the action taken in terminating the Plaintiff therein was appropriate, but in this case the grounds for summary termination of the Plaintiff are less clear.

■ A failure by a State agency to abide by its own applicable personnel rules in discharging an employee does not necessarily rise to the level of a violation of due process. See e.g. *Thompson v. Bass,* 616 F.2d 1259, (5th Cir.1980), cert. den. 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245; *Stenseth v. Fort Worth and Tarrant County Community Action,* 673 F.2d 842, (5th Cir.1982). However, the factual dissimilarities between this action and those in *Johnston v. Herschler* show that such decision does not necessarily dictate the manner of determination of the issues raised in this action. What process is "due" in a given case is determined through use of a flexible standard, in which the Court must weigh the substantiality of the private individual's property and liberty interest against the competing governmental interests, and the burden which would be imposed upon governmental processes should the Court require additional safeguards be imposed. See *Goss v. Lopez,* 419 U.S. 565, 579–583, 95 S.Ct. 729, 738–740, 42 L.Ed.2d 725 (1975). Thus, while summary termination of an employee may be justified without prior notice when the employee has engaged in flagrant misconduct, given the great governmental interests presented in such cases, due process may require additional safeguards to be used in cases such as this one, where less substantial governmental interests are presented. This is especially true where the termination interrupts 17 years of work experience with the State, and no prior efforts to correct the alleged deficiencies have been undertaken.

*Irreparable injury to the Plaintiff:*

The Plaintiff alleges that, as a result of the discharge, he has been defamed in the community, and has been inhibited in his ability to find employment within the social work profession in the State of Wyoming. As a result, the Plaintiff alleges that he has been deprived of his ability to support his family, and has suffered substantial financial hardship.

Relatively few cases have addressed the issue of whether a Court may order interim reinstatement of an employee pending review of the termination by a personnel review board, where the Court finds it likely that the termination violated the employee's due process rights. In the cases which have addressed the issue, the Courts have hesitated to grant such relief. See *Skomorucha v. Wilmington Housing Authority,* supra, and *Graves v. Duganne,* 581 F.2d 222 (9th Cir., 1978). The Court in *Skomorucha* stated that ". . . temporary loss of income does not generally support a finding of irreparable injury, if there is a claim for back pay." 504 F.Supp. at 841. In addition, in the context of the facts of this case, temporary reinstatement would not serve substantially to remedy the defamation suffered by the Plaintiff in connection with his discharge. As was indicated above, the appeal taken by the Plaintiff to the Career Services Council should be heard and decided in no more than thirty (30) days. This consideration causes the Court to conclude that the Plaintiff has failed to show that irreparable injury will result should the Court refuse to grant the Plaintiff the equitable relief of job reinstatement sought by him.

■ Moreover the Court finds that granting the relief sought would tend to interfere with the operations of the Career Service Council, in that the Court would be determining the same issue which has been raised before the Council, and would be granting, at least temporarily, the same relief as is sought by the Plaintiff in such proceedings. Such an interference amounts to an injury to the Defendants which would flow from an order granting the relief sought by the Plaintiff. Public policy mandates that this Court minimize its disruption of the operations of State administrative agencies. *Atchison v. Nelson,* 460

F.Supp. 1102 (D.C.Wyo., 1980). The Court is persuaded by such considerations that it would be inappropriate now to grant the relief sought by the Plaintiff's application. However, the Court shall retain jurisdiction over this matter, reserving its decision upon the Plaintiff's application pending review of the Plaintiff's case by the Wyoming Career Service Council.

THEREFORE, IT IS HEREBY

ORDERED that the Plaintiff's action herein be, and the same hereby is, stayed, for a period of thirty (30) days from the date of this hearing, pending a hearing and decision by the Wyoming Career Services Council concerning the Plaintiff's termination, and this Court shall withhold action upon the Plaintiff's application during that time period, or until it otherwise seems appropriate to reassert jurisdiction in this matter.