**Elana CASINES, individually and on Behalf of all others similarly situated, Plaintiff-Appellee,**

v.

**Paul MURCHEK, etc., Eugene Walden, III, etc., William Abbey, etc., Phillip Ware, etc., and Louie L. Wainwright, Defendants-Appellants.**

**Elana CASINES, individually and on Behalf of all others similarly situated, Plaintiff-Appellant,**

v.

**Paul MURCHEK, etc., Eugene Walden, III, etc., William Abbey, etc., Phillip Ware, etc., and Louie L. Wainwright, Defendants-Appellees.**

Nos. 83–3648, 84–3040 and 84–3331.

United States Court of Appeals, Eleventh Circuit.

July 29, 1985.

Rehearing and Rehearing En Banc Denied Sept. 5, 1985.

Bruce A. Minnick, William J. Kendrick, J.B. Donnelly, Asst. Attys. Gen., Tallahassee, Fla., for P. Murchek, et al.

Jerry G. Traynham, Tallahassee, Fla., for E. Casines.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case we determine whether a state employee holding permanent employment status who is terminated "without cause" has federal due process claims which, when violated, may produce a judgment for money damages against the state officials involved in the termination and failure to reinstate. We reverse and remand.

## FACTS

The appellants dismissed appellee, Elana Casines, from her position as a parole and probation officer for the Parole and Probation Commission (FPPC) of the state of Florida for conduct unbecoming a public employee. Casines was a permanent status employee within the Florida career service system.

Casines's dismissal occurred because she permitted a friend and co-worker to consume alcohol while on furlough from an alcohol rehabilitation program. Casines and the co-worker were off duty at the time of the incident, were not performing any work-related activity, and the co-worker was not on parole or probation. Although Casines was under no legal duty to supervise the co-worker, Casines was aware that the co-worker's retention in her job depended upon her successful completion of the alcohol rehabilitation program.[1]

Following dismissal, the FPPC advised Casines of her right to appeal the dismissal to the Career Service Commission (CSC). On June 24, 1976, Casines filed an appeal with the CSC; the CSC conducted an evidentiary hearing on July 6, 1977, and on October 6, 1977, the CSC issued its order stating that the FPPC had failed to demonstrate just "cause" for Casines's dismissal, as required by Fla.Stat.Ann. § 110.061 (West 1977).[2] The CSC ordered Casines reinstated effective immediately, but without backpay.[3]

Dissatisfied with the CSC's failure to award her backpay, Casines appealed the CSC decision to the state district appellate

1. Casines informed her office supervisor, appellant, William Abbey, of the drinking incident. Abbey consulted with his immediate supervisor and district supervisor of the FPPC, appellant, Phillip Ware. Thereafter, Casines met with both Abbey and Ware to discuss the incident.

Ware subsequently recommended to appellant, Paul Murchek, executive director of the FPPC that Casines be dismissed. Murchek then consulted with appellant Eugene Walden, III, acting personnel director of the FPPC, and directed Walden to notify Casines of her dismissal.

2. Section 110.061 provided: "Any employee who has permanent status in the career service may only be terminated for cause by the agency or officer by whom he is employed."

The statute was repealed effective July 1, 1979. 1979 Fla.Laws 190 § 20. The statute has been reenacted, however, with some modifications. See Fla.Stat.Ann. § 110.309 (West 1982).

3. The CSC's refusal to award Casines back pay was apparently premised upon its conclusion that while Casines's actions did not constitute "cause" within the meaning of section 110.061, Casines had exercised "extremely poor judgment."

court. The state district appellate court affirmed the CSC decision.

On July 1, 1976, in the period between Casines's dismissal and the CSC's determination that Casines be reinstated, the state of Florida underwent a major reorganization of its agencies. The reorganization transferred the position of parole and probation officer to the Department of Corrections (DOC).[4] Appellant, Louie Wainwright, Director of the DOC, refused to reinstate Casines arguing that the CSC's reinstatement order was directed to the FPPC, and not to the DOC.

On March 21, 1978, pursuant to Fla.Stat. Ann. § 120.69 (West 1982), Casines commenced an action in a state circuit (trial) court seeking enforcement of the CSC order and backpay. On May 15, 1978, while the state circuit court action remained pending, Casines commenced this action in federal district court.[5]

Anticipating a vacancy, on April 8, 1980, appellants offered Casines the next available parole and probation officer position. By letter dated May 16, 1980, Casines accepted the offer and reported to work on June 21, 1980. Due to a series of misunderstandings, however, Casines was not actually reemployed until August 19, 1980.

Upon reemployment, at her request, Casines was immediately placed on annual leave so that she could assist in the preparation of her case for trial. She exhausted annual leave in November, 1980. Casines maintained that she was suffering from "medical-psychological difficulties" in returning to work, and requested additional leave. On December 10, 1980, her request was denied. On December 15, 1980, Casines failed to report to work and was deemed to have resigned.

## PROCEDURAL HISTORY

Casines brought this action under the fifth and fourteenth amendments to the United States Constitution and 42 U.S.C.A. § 1983 (West 1981). The initial complaint alleged that Fla.Stat.Ann. § 110.061 was unconstitutional because it failed to provide adequate pre-termination safeguards against wrongful dismissal; it failed to require a prompt post-termination hearing; and it failed to guarantee wrongfully dismissed employees reinstatement and backpay. The complaint also alleged that the appellants, Murchek, Simmons, Ware, Walden, and Abbey had denied Casines due process of law by failing to provide her a pre-termination hearing and by failing to reinstate her in accordance with the CSC order.[6] In addition to declaratory and injunctive relief, the complaint sought money damages.

On August 22, 1978, the appellants moved to dismiss the action on grounds of res judicata, abstention, and lack of subject matter jurisdiction. The district court denied the motion.

On March 25, 1980, Casines moved the district court for partial summary judgment on the issues of liability and remedies. The district court entered partial summary judgment in favor of Casines declaring Fla.Stat.Ann. § 110.061 unconstitutional, and ruling that the continued deprivation of Casines's property rights in her employment constituted a violation of the fifth and fourteenth amendments. The district court permanently enjoined the appellants from denying Casines her property rights in her employment, and from refusing to reinstate her. The district court reserved judgment on the issues of qualified immunity and damages.

---

4. Pursuant to Fla.Stat.Ann. § 20.315(22) (West 1975), "[a]ll powers, duties and functions of the Parole and Probation Commission," with the exception of certain quasi-judicial tasks not relevant here, were transferred to the Florida Department of Offender Rehabilitation. The name of the latter agency was subsequently changed to the Florida Department of Corrections. 1978 Fla.Laws 53.

5. Casines's enforcement action in state circuit court is still pending.

6. Simmons succeeded Murchek as the acting director of the Parole and Probation Commission after the FPPC was transferred to the DOC.

**1498**

On July 7, 1980, Casines filed a second amended complaint against Wainwright. Casines viewed Wainwright as the only state official with authority to reinstate her, and he was, therefore, deemed to be an indispensable party to the action.

On April 18, 1983, the district court issued its final judgment, declaring that Simmons was not liable, but that the other appellants were liable and were not entitled to qualified immunity. The final judgment also awarded damages. The district court held initially that the amount of damages would be reduced by the amount of income Casines earned from other sources during the period of her dismissal. On October 13, 1983, the district court amended its final judgment and declared that the amount of Casines's award would not be reduced by her interim earnings.

Thereafter, on December 9, 1983, the district court awarded Casines attorney's fees and costs. The appellants moved the court to clarify its order to indicate that Simmons was not liable for attorney's fees. On April 19, 1984, the district court granted the appellants' motion. Casines cross-appeals that order.

**CONTENTIONS OF THE PARTIES**

Appellants contend that Casines's challenge to the constitutionality of Fla.Stat. Ann. § 110.061 and to appellants' failure to give her a pre-termination hearing is barred under the doctrine of res judicata.[7] They also contend that the district court should have dismissed Casines's claim for reinstatement in accordance with the CSC order because the complaint failed to state a claim under 42 U.S.C.A. § 1983. Or, at the least, they argue, the district court should have abstained from entertaining the action in light of Casines's pending state circuit court enforcement action. Ad-

ditionally, appellants contend that they are immune from liability.

As to attorney's fees, appellants' contention is that Casines is not "a prevailing party" within the meaning of 42 U.S.C.A. § 1988 (West 1981) and, therefore, is not entitled to an award of attorney's fees.

Casines contends that the doctrine of res judicata is not applicable in this case for two reasons: (1) the state court's affirmance of the CSC order was not a determination on the merits, and (2) this cause of action is not the same cause of action presented to the state court. Casines also argues that appellants' reliance upon *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as mandating dismissal of her lawsuit is misplaced and that abstention is not applicable because the resolution of the state law issues will not resolve her federal constitutional claims.

**DISCUSSION**

**I. Statutory and Pre-Termination Claims**

*A. Res Judicata*

Title 28 U.S.C.A. § 1738 (West 1966) "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982) (footnote omitted).[8] Section 1738 requires that we apply the state of Florida's rules of res judicata to determine what effect, if any, the state court's judgment affirming the CSC order has on this case. *Kremer*, 456 U.S. at 481–82, 102 S.Ct. at 1897–98.

■ Under the doctrine of res judicata as applied in Florida, a judgment on the merits is conclusive as to all matters which

---

7. Appellants also contend that the action is barred under the doctrine of collateral estoppel. This argument was not raised before the district court; therefore, we do not address it. *See Sanders v. United States*, 740 F.2d 886, 888 (11th Cir.1984).

8. Section 1738 provides that the records and judicial proceedings of any state, territory, or possession of the United States "shall have the same full faith and ... credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory, or Possession from which they are taken."

were or could have been determined and will bar a subsequent action between the same parties on the same cause of action. *Youngblood v. Taylor,* 89 So.2d 503, 505 (Fla.1956); *see Albrecht v. State,* 444 So.2d 8, 12 (Fla.1984).

> [S]everal conditions must occur simultaneously if a matter is to be made *res judicata:* identity of the thing sued for; identity of the cause of action; identity of parties; [and] identity of the quality in the person for or against whom the claim is made.

*Albrecht,* 444 So.2d at 12 (citing *Donahue v. Davis,* 68 So.2d 163, 169 (Fla.1953) and cases cited therein).

On review of the CSC order, the state district court denied Casines's petition for writ of certiorari. Casines contends that the state court's judgment amounts to a denial of discretionary review and was not, therefore, a judgment on the merits. Although we find that the state district court's judgment was on the merits, we also find that the conditions required for the application of res judicata are not present in this case.

Casines's state appellate court action named as defendants the CSC and the FPPC. The state action challenged the CSC's failure to award Casines backpay under Fla.Stat.Ann. § 110.061. The issue before the state appellate court was whether section 110.061 required that the CSC award backpay to an employee who was dismissed "without cause." The only federal constitutional claim presented to the state court was whether the CSC and the FPPC had denied Casines due process of law by failing to provide her a prompt post-termination hearing. Casines sought only backpay under the state statute. She did not and could not seek compensatory damages for any alleged federal constitutional violation in that forum.

This action is brought against individual officials within the former FPPC and the director of the DOC. In this section 1983 action, Casines challenges the constitutionality of Fla.Stat.Ann. § 110.061, the appellants' failure to accord her a pre-termination hearing, and the appellants' refusal to reinstate her in accordance with the CSC order. Casines seeks backpay for the period between her dismissal and the CSC order, as well as backpay for the period during which the appellants refused to reinstate her, and damages. Casines could not have brought an action for compensatory damages against these individual appellants in the state administrative action.

■ We hold that the elements of res judicata are not present in this case.[9] The

---

9. Appellants cite to our recent decision in *Gorin v. Osborne,* 756 F.2d 834 (11th Cir.1985), in support of their argument that Casines's action is barred under the doctrine of *res judicata.* In *Gorin* we held that

> a prior state court affirmance of a state administrative ruling is entitled to *res judicata* and collateral estoppel effect in a subsequent federal civil rights action brought pursuant to 42 U.S.C. § 1983, notwithstanding the fact that the state court's review was limited to a determination of whether there was 'any evidence' in the record sufficient to support the factual findings of the administrative tribunal.

*Gorin,* at 835. The appellants' reliance upon *Gorin* is misplaced, however. Unlike this case, the issue before the state court in *Gorin* was whether the plaintiff had been deprived of her property right in her employment without due process. *Gorin* precludes a federal action only where the issues raised in that action were actually litigated in a prior state action.

This interpretation of *Gorin* is entirely consistent with *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), which *Gorin* relied upon as controlling. The plaintiff in *Kremer* had presented his employment discrimination claim before the New York state courts before filing an action in federal court under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e—2000e-17 (West 1981). In discussing the preclusive effect of the state court judgment, the Supreme Court stated:

> It may be that petitioner would be precluded under *res judicata* from pursuing a Title VII claim. However that may be, it is undebatable that petitioner is at least estopped from relitigating the issue of employment discrimination arising from the same events.

*Kremer,* 456 U.S. at 481 n. 22, 102 S.Ct. at 1897 n. 22.

It is clear that *Kremer* accorded preclusive effect to the state court judgment because the issue which the plaintiff raised before the federal courts was the same issue which he had

state court action and this section 1983 action lack identity of parties, identity of the cause of action, and identity of the thing sued for. *See Albrecht,* 444 So.2d at 12.

Casines's action challenging the constitutionality of Fla.Stat.Ann. § 110.061 and the appellants' failure to accord her a pre-termination hearing is not barred under the doctrine of res judicata. This does not end our inquiry; we turn to the question of qualified immunity.

### B. Qualified Immunity

The district court ruled that the appellants were not entitled to qualified immunity because Casines's right to a pre-termination hearing was clearly established at the time of her discharge. *Thurston v. Dekle,* 531 F.2d 1264, 1272 (5th Cir.1976), *vacated on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144, *on remand,* 578 F.2d 1167 (5th Cir.1978). After trial on the issue of damages, however, the district court acknowledged that *Weisbrod v. Donigan,* 651 F.2d 334 (5th Cir.1981), had rejected the argument that a Florida state employee's right to a pre-termination hearing or prompt post-terminiation hearing was clearly established. *See Davis v. Scherer,* 468 U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139, *reh'g denied,* —— U.S. ——, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984). Thus, as the court stated in *Weisbrod,* the appellants "did not act in disregard of any well-settled constitutional rights." 651 F.2d at 336. Accordingly, the district court vacated that portion of its partial summary judgment order which was "inconsistent with the *Weisbrod* holding."

The district court premised its denial of qualified immunity to the appellants upon a different ground. Relying upon *Williams v. Treen,* 671 F.2d 892, 900 (5th Cir.1982), *cert. denied,* 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983), the district court concluded that the appellants were not enti-

tled to qualified immunity because they had violated Casines's clearly established rights under Florida state law to be dismissed only upon a showing of cause. Casines urges us to uphold the district court's denial of qualified immunity because the appellants either knew or should have known that her off-duty conduct, under circumstances where she was under no legal duty to act, did not constitute "cause" for dismissal under section 110.061. Appellants argue that the district court's holding is erroneous because section 1983 protects only federal rights.

The Supreme Court recently addressed the issue of the proper standard for determining whether an official is entitled to qualified immunity when that official's conduct violates a state law as well as a provision of the federal Constitution. As in this case, the state officials in *Davis v. Scherer,* 468 U.S. ——, 104 S.Ct. 3012, 82 L.Ed.2d 139 *reh'g denied,* —— U.S. ——, 105 S.Ct. 26, 82 L.Ed.2d 919 (1984), did not challenge the district court's holding that they had violated the plaintiff's rights under the fourteenth amendment to the United States Constitution. Rather, the state officials argued that they were entitled to qualified immunity because under *Weisbrod,* the plaintiff's rights were not clearly established at the time of his discharge. The plaintiff countered, and the district court agreed, that the state officials were not entitled to qualified immunity because they had acted contrary to a state administrative regulation which required that an employee be given an opportunity to respond in writing to the charges against him and that a complete investigation of the charges be conducted prior to his dismissal.

The Supreme Court concluded that under the plaintiff's argument, "officials would be liable in indeterminate amount for violation of *any* constitutional right—one that was not clearly defined or perhaps not even foreshadowed at the time of the alleged violation—merely because their official con-

litigated before the state courts. The issues which Casines presents in this section 1983 action were not presented to the state court. Neither *Kremer* nor *Gorin* addressed the question

of whether a section 1983 claimant is precluded from litigating in federal court an issue which she did not and could not raise in the previous state litigation.

duct also violated some statute or regulation." *Davis,* —— U.S. at ——, 104 S.Ct. at 3020, 82 L.Ed.2d at 150 (emphasis in original). Such a result was unacceptable because it

> would disrupt the balance that our cases strike between the interest and vindication of citizens' constitutional rights and public officials' effective performance of their duties. The qualified immunity doctrine recognizes that officials can act without fear of harassing litigation only if they reasonably can anticipate when their constitutional conduct may give rise to liability for damages and only if unjustified lawsuits are quickly terminated.

*Davis,* —— U.S. at ——, 104 S.Ct. at 3020, 82 L.Ed.2d at 150 (citations omitted).

Thus, the Supreme Court concluded, "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis,* —— U.S. at ——, 104 S.Ct. at 3021, 82 L.Ed.2d at 151.

 Casines does not challenge the district court's finding that her federal due process rights were not clearly established at the time of her dismissal. Rather, she argues that appellants are not entitled to qualified immunity because their conduct

violated clearly established state law. The mere fact that Casines's state statutory rights were clearly established at the time of her dismissal is not, however, sufficient to deny appellants qualified immunity. As the Supreme Court made clear in *Davis,* officials lose their qualified immunity by violating clearly established statutory rights only "where the plaintiff seeks to recover damages for violation of those statutory rights." *Davis,* —— U.S. at —— n. 12, 104 S.Ct. at 3020 n. 12, 82 L.Ed.2d at 149 n. 12. The official's violation of a state statute must either be actionable under section 1983, or state law must govern the constitutional analysis of what process is due the plaintiff under the fourteenth amendment. *Davis,* —— U.S. at —— & n. 11, 104 S.Ct. at 3019 & n. 11, 82 L.Ed.2d at 149 & n. 11. Casines does not claim that Fla.Stat.Ann. § 110.061 creates a cause of action for damages or that it provides a basis for a section 1983 action. Therefore, we hold that the violation of section 110.061 does not deprive appellants Murchek, Ware, Walden, and Abbey of qualified immunity.[10]

## II. Post-Termination Claim

On March 21, 1978, pursuant to Fla.Stat. Ann. § 120.69 (West 1982), Casines petitioned a state circuit court for enforcement of the CSC reinstatement order.[11]

---

**10.** Although this issue was not addressed by the Court in *Davis,* we agree with appellants' contention that section 1983 protects only against violations of federally protected rights. *See Monroe v. Pape,* 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961). In *Davis,* the Supreme Court cited *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), as examples of cases where an official might lose his immunity for violating clearly established statutory rights. *Davis,* —— U.S. at —— n. 12, 104 S.Ct. at 3020 n. 12, 82 L.Ed.2d at 149 n. 12. Both of those cases alleged violations of federal statutory rights. The action in *Harlow* was premised in part upon the plaintiff's "inferred" statutory causes of action under 5 U.S.C.A. § 7211 (West 1980) and 18 U.S.C.A. § 1505 (West 1984). *Harlow,* 457 U.S. at 805, 102 S.Ct. at 2731. The plaintiff's section 1983 action in *Thiboutot* sought damages for violation of 42 U.S.C.A. § 602(a)(7)

(West Supp.1985). Casines's section 1983 action does not seek damages for violation of any federal statutory rights.

**11.** Section 120.69 provides:

> (1) Except as otherwise provided by statute:
> ....
> (b) A petition for enforcement of any agency action may be filed by any substantially interested person who is a resident of the state....
> (c) A petition for enforcement filed by a nongovernmental person shall be in the name of the State of Florida....
> (2) A petition for enforcement may request declaratory relief; temporary or permanent equitable relief; any fine, forfeiture, penalty, or other remedy provided by statute; any combination of the foregoing; or in the absence of any other specific authority, a fine not to exceed $1,000.

Wainwright asserts that the state action will resolve Casines's post-termination claim and afford Casines complete relief.[12] Therefore, Wainwright argues, the district court should have abstained from entertaining Casines's section 1983 claim for reinstatement. In the alternative, Wainwright argues that section 120.69 provides Casines with an adequate state remedy for redress of the alleged post-termination due process violation; therefore, this issue is controlled by *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Wainwright contends that under *Parratt,* Casines has failed to state a section 1983 claim.

Casines argues that the district court did not abuse its discretion by refusing to abstain from addressing her post-termination claim. She asserts that the state enforcement proceedings involve only issues of state law, the resolution of which will not eliminate the need for the federal court to address her federal constitutional claim. Casines also argues that Wainwright's conduct constitutes a substantive due process violation and that *Parratt* is not controlling because it applies only to procedural due process violations.

The district court found, and Wainwright does not dispute, that Casines had a property interest in her employment. Wainwright could not continue to deprive Casines of that federally protected right without according her due process of law. Casines's post-termination claim involved an issue of federal constitutional law. The issue pending in the state circuit court enforcement proceeding is whether Wainwright is bound by the CSC reinstatement order, even though the order was addressed to the FPPC. Whether the district court abused its discretion by refusing to abstain from hearing the action is controlled by *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* holds that where a case presents an important federal constitutional issue and an unsettled question of state law which, when answered, may make final resolution of the constitutional question unnecessary, federal courts should abstain from deciding the constitutional issue until the state law issue is resolved.

■ In this case, a ruling by the state court that Wainwright was bound by the CSC order would leave the federal due process and damages issues ripe for federal resolution. On the other hand, if the state court rules that Wainwright was not bound by the CSC order, all federal issues are resolved. The abstention issue is a serious one in this case. We remand this issue to the district court for further consideration under *Pullman* and in light of events that have or have not occurred in the state circuit court action.

■ If the district court does not find abstention proper, it must address the due process claim. In *Parratt* the Supreme Court held that where the state has an adequate post-deprivation remedy for redress of "random and unauthorized acts by state employees," the complaint fails to state a cause of action under section 1983 for a violation of due process. Where, however, the claimant is deprived of due process regardless of the state's post-deprivation procedures, then the claimant has suffered a substantive violation of due process. As the Fifth Circuit has explained, a plaintiff states a claim for a substantive due process violation by alleging that the state has violated an independent substantive right and it is clear that "rights are violated no matter what process precedes, accompanies, or follows the unconstitutional action." *Augustine v. Doe,* 740 F.2d 322, 327 (5th Cir.1984) (footnote omitted).

*Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), illustrates such a substantive due process violation. The plaintiff in *Logan* filed an administrative complaint of employment discrimination with the Illinois

---

**12.** Only Wainwright had authority to reinstate Casines. Therefore, this claim pertains only to Wainwright.

Fair Employment Practices Commission (Commission). Under the Illinois Fair Employment Practices Act, the Commission had 120 days within which to convene a fact-finding conference designed to obtain evidence, ascertain the position of the parties, and explore the possibility of a negotiated settlement. The Commission failed to convene a fact-finding conference within the 120 days. The Illinois Supreme Court held that the plaintiff's complaint was barred and that the plaintiff could not file a second charge before the Commission based upon the same act of alleged discrimination, because to do so would circumvent the purpose of the act and frustrate the public interest in expeditious resolution of disputes.

On appeal, the United States Supreme Court concluded that a post-deprivation procedure which permitted the state to terminate a claimant's cause of action because a state official, for reasons beyond the complainant's control, failed to comply with a statutorily mandated procedure, was constitutionally inadequate. The Supreme Court distinguished *Logan* from *Parratt* on the ground that in *Logan*, the state system itself destroyed the plaintiff's property interest, whereas in *Parratt*, it was the "random and unauthorized act" of a state employee which had resulted in the deprivation of the plaintiff's due process rights. The plaintiff in *Logan* was not challenging the Commission's error in failing to timely convene a fact-finding conference. Rather, the plaintiff was challenging the "established state procedure" that destroyed his entitlement without according him proper procedural safeguards. *Logan,* 455 U.S. at 436, 102 S.Ct. at 1158.

Casines acknowledges that *Hudson v. Palmer,* —— U.S. ——, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), extended *Parratt* to apply to intentional deprivations of property. Casines contends, however, that *Parratt* does not apply in this case for two reasons. First, Casines argues that Wainwright's action cannot be characterized as "random and unauthorized." She argues that, as the director of a state agency, Wainwright's actions in refusing to rein-

state her constitute state policy and are more akin to an "established state procedure." Second, Casines contends that section 120.69 does not provide her an adequate post-deprivation remedy because, although it provides for declaratory and injunctive relief, it does not provide for damages. Monetary relief is limited to a mere maximum fine of $1,000. *See* Fla.Stat. Ann. § 120.69(2).

*Parratt* was decided on May 18, 1981, four months after the district court entered partial summary judgment in favor of Casines on the issue of liability. Thus, the district court did not have the benefit of *Parratt, Hudson,* or the *Logan* explanation of *Parratt* when it addressed the issue of Wainwright's liability for refusing to reinstate Casines. Therefore, if the district court does not abstain, it should reconsider Casines's post-termination claim in light of these intervening decisions. *Broussard v. Southern Pac. Transp. Co.,* 665 F.2d 1387, 1390 (5th Cir.1982) (case remanded for reconsideration in light of intervening decision).

## III. Attorney's Fees

The district court awarded Casines attorney's fees under 42 U.S.C.A. § 1988 (West 1981).

> Section 1988 provides:
>
> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

In *Doe v. Busbee,* 684 F.2d 1375, 1381 (11th Cir.1982), we stated the test for determining whether a plaintiff is a "prevailing party" within the meaning of section 1988:

> [I]n order to be a prevailing party, a plaintiff must achieve significant relief to which [s]he was entitled under the civil rights laws through [her] success on the merits, favorable settlement, or voluntary actions by the defendants.... However, consistent with the policy un-

derlying section 1988, the plaintiff must in some way vindicate a civil right at issue in the litigation against the violator of that civil right in order to be considered a 'prevailing party.'

■ Although Casines was reinstated during the pendency of this litigation, this lawsuit was not "a significant catalyst motivating defendants to provide the primary relief" which Casines sought. *Robinson v. Kimbrough*, 652 F.2d 458, 465 (5th Cir. 1981). Casines was already entitled to reinstatement by the CSC order. Moreover, appellants Murchek, Ware, Walden, and Abbey had no authority to reinstate Casines. The "primary" relief which Casines sought was backpay for the entire period during which she was wrongfully discharged, and damages. Murchek, Ware, Walden, and Abbey are each immune from liability for backpay and damages. Thus, Casines has failed to vindicate a civil right against either of them.

Since the attorney's fee issue is not ripe for disposition as to Wainwright, we do not reach the issue raised in Casines's cross-appeal of the district court's order modifying the award of attorney's fees.

### CONCLUSION

We hold that appellants Murchek, Walden, Ware, and Abbey are entitled to qualified immunity on the statutory and pre-termination claims. We remand to the district court the post-termination claim.

**REVERSED and REMANDED.**