John W. BOONE, Plaintiff,

v.

William MINGUS, Robert Doyle,
Thomas Hart, et al.,
Defendants.

Civ. A. No. 88–0284–AH.

United States District Court,
S.D. Alabama, S.D.

Sept. 26, 1988.

Robert F. Clark, W. Lloyd Copeland, Mobile, Ala., for plaintiff.

William R. Lauten, Connie J. Morrow–Fundin, Michael S. McNair, Mobile, Ala., for defendants.

## ORDER

HOWARD, District Judge.

This cause is before the Court on defendant's motion for summary judgment (Tab # 4, supplemented by Tab # 11), plaintiff's motions to dismiss defendants' motion for summary judgment (Tab # 6), and to consider the affidavit of Sgt. Jack E. Dove (Tab # 17).

Plaintiff's motion to dismiss the summary judgment motion (Tab # 6) is DENIED because defendants subsequently complied with Local Rule 8. Plaintiff's motion to consider the affidavit (Tab # 17) is GRANTED.

## SUMMARY JUDGMENT

Regarding the summary judgment motion, the Court has considered the pleadings, the admitted facts, the affidavits of Sheila Little, Marion Bracy, Sgt. George Washington, and Jack Dove, the letter briefs filed by the parties, the transcripts of the hearings, and all other matters of record and hereby enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The plaintiff is over the age of twenty-one years, a resident of Mobile County, Alabama and at all times pertinent to this action was employed as a police officer by the City of Mobile, Mobile, Alabama. (¶ 1, original complaint, Tab # 1).

2. During all times pertinent to this action, defendant William Mingus was the Chief of Police of the City of Mobile; Thomas Hart was plaintiff's immediate supervisor in the Mobile Police Department; and Robert Doyle was the Director of Public Safety in charge of the Mobile Police Department in the City of Mobile. (¶ 2, original complaint, Tab # 1).

3. On October 26, 1987 Officer John Franklin Jackson was injured by a thrown beer bottle while he was on duty. This occurred at 6:00 p.m. on Simpson Drive in the area of the City of Mobile known as "Happy Hills", a public housing project. (¶ 1, supplemented motion for summary judgment, Tab # 11 (sup. s.j.)).

4. Later that night, Officer Jackson's immediate supervisor, Sgt. Jack E. Dove, Jr. filled out a City of Mobile "Supervisor's Investigation Report" form. This form was part of the insurance claims process within the Mobile Police Department, and it passed through several levels of review from within the Police Department to the insurance adjustor. (¶ 2 sup. s.m.).

5. The "Happy Hills" area is made up of a population of predominantly black citizens. (¶ 2, sup. s.j.)

6. Question # 20 of the "Supervisors Investigation Report Form" filled out by Sgt. Dove, asked; "What acts, failures to act and/or conditions contributed most directly to this incident?" Sergeant Dove responded: "The act of responding to a call in this particular geographic area of the City is inherently dangerous, due to the limited intelligence of some of the residents of the ares." (Exhibit B).

6. Question # 21 asked: "What are the basic or fundamental reasons for the existence of these acts and/or conditions?" Sgt. Dove responded: "Ignorance of the unknown perpetrator in an animalistic social response to the sight of the police in his neighborhood/habitat." (Exhibit B).

7. At approximately 12:29 a.m. on October 27, 1987, Sgt. Dove completed the injury form and passed it to his supervisor, Lt. John W. Boone, the plaintiff in the instant action. Lt. Boone reviewed the form and signed it in the space numbered "27" which says "reviewed by". (sup. s.j. ¶ 6; and Exhibit B).

8. The report was distributed in the usual way, and came to Capt. Hart's attention some days later. Capt. Hart thought that the above-quoted responses were offensive to minorities, and met with his supervisors to discuss the matter. As a result of that meeting, Public Safety Director Robert Doyle was told of this incident (¶¶ 7–10, sup. s.j.).

9. Captain Hart recalled the original report and instructed Sgt. Dove to write a less controversial version. (¶ 13, sup. s.j.).

10. On November 5, 1987 Capt. Hart recommended that Lt. Boone and Sgt. Dove be suspended without pay for a period of three days. Lt. Boone was served with a notice of violations of the Mobile County Personnel Board Rules, and Mobile Police Department Rules, including violating the reasonable regulations made by a superior officer, engaging in conduct unbecoming to an officer, and expressing prejudice regarding race during the performance of police duties. (¶¶ 15–16, sup. s.j.).

11. A pre-disciplinary hearing was held on November 12, 1987. Lt. Boone had the opportunity to explain or rebut the charges against him. (Exhibit K).

12. On November 17, 1987 Mayor Arthur Outlaw notified Lt. Boone of his three (3) day suspension. (Exhibit M). Sgt. Dove also was suspended for three days without pay. (Dove affidavit at 2).

13. Lt. Boone filed a grievance concerning the suspension. As a result of that procedure, Lt. Boone's suspension was rescinded, and a letter of reprimand was issued in its place. (¶ 20, 21 sup. s.j. and Exhibit P). Sgt. Dove likewise appealed his three day suspension to the Grievance Committee, with the same result. (Dove affidavit at 2).

14. The City of Mobile appealed the decision of the Grievance Committee, which resulted in a hearing before the full Mobile County Personnel Board on March 29, 1988. All parties and witnesses were present and all parties were represented by counsel. (¶ 23, sup. s.j.)

15. By a vote of 4 to 1, the Mobile County Personnel Board, in an order dated April 5, 1988, upheld the original three (3) day suspension of Lt. Boone. The majority opinion agreed that the language in question "clearly expresses prejudice concerning race, lifestyle, or similar personal characteristics." (Exhibit E, p. 12, Personnel Board Order).

16. Lt. Boone has filed an appeal of the ruling to the Circuit Court of Mobile County, pursuant to Section XXXIV of the Civil Service Act. (¶ 26, sup. s.j.).

17. In Sgt. Dove's case, the City of Mobile filed an appeal of the Grievance Committee's decision, but later dismissed the appeal. (Dove affidavit at 2).

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of this Section 1983 action pursuant to Title 28 U.S.C. § 1343.

2. For purposes of Title 42 U.S.C. § 1983, an act is done under "color of law" if it is within the bounds of an official's

lawful authority, regardless of whether the specific conduct was authorized by the state. This may include acts which were specifically forbidden by the state. Defendants Mingus, Hart and Doyle were clearly acting within the bounds of their lawful authority, and thus were acting under color of state law for purposes of this action.

## ABSTENTION DOCTRINE

Defendants also suggested that the Court abstain from exercising jurisdiction over this action, although their brief addresses abstention only in the context of plaintiff's First Amendment claim.

■ Federal courts have traditionally recognized two abstention doctrines. *Younger* abstention (first set out in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)), indicates that federal courts should abstain from enjoining ongoing state criminal proceedings except in extraordinary circumstances. *See e.g., Cate v. Oldham,* 707 F.2d 1176, 1183 (11th Cir.1983). *Younger* abstention is clearly inappropriate here.

■ *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed.2d 971 (1941) (*Pullman*) sets out the second abstention doctrine. Under *Pullman,* federal courts should abstain from hearing cases which present both an important federal question and an unsettled question of state law when disposition of the state law claim could make resolution of the constitutional issue unnecessary. *See Casines v. Murchek,* 766 F.2d 1494, 1502 (11th Cir.1985). The *Pullman* doctrine is to be used only in extraordinary circumstances. *Cate,* 707 F.2d at 1184. Applying the rule in *Pullman* to the facts at hand, the Court concludes that *Pullman* abstention is likewise inappropriate, as there is no state law claim in the instant action which would make resolution of this § 1983 claim unnecessary.

## JURISDICTIONAL STATEMENT

Plaintiff's complaint alleges that the Court has jurisdiction of this § 1983 action under the First, Fourteenth, and Eighth Amendments to the United States Constitution, but makes no other claims regarding the Eighth Amendment. Defendants contend that plaintiff failed to make out a claim of cruel and unusual punishment (summary judgment motion, at 22, 23 (Tab # 4) and the Court agrees.

## COUNT ONE

Count One of the plaintiff's complaint alleges that the defendants deprived the plaintiff of his civil rights by (1) failing to accord the plaintiff due process in regard to his property interest in his employment; (2) failing to afford the plaintiff due process with regard to his right to be free from taint in his reputation, good name, honesty and integrity; and (3) depriving plaintiff of his protected First Amendment free speech rights.

## DUE PROCESS CLAIMS

The plaintiff has alleged a deprivation of due process stemming from two categories of deprivations. Since only life, liberty and property are protected under the Fourteenth Amendment from deprivation without due process of law, the first question is whether plaintiff had a protected property interest in his employment, or in his reputation, good name, honesty and integrity. If so, the process which plaintiff was due, and whether it was accorded him, becomes the pertinent question.

■ As a tenured police officer, plaintiff undoubtedly has a property right in his continued employment that is safeguarded by due process. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 2698–99, 33 L.Ed.2d 570 (1972). Whether he has a like property interest in his reputation, good name, honesty and integrity is a closer question, based on these facts. If Lt. Boone had been suspended due to a charge of dishonesty or immorality, he would have had a clearer right to due process. *Id.* 92 S.Ct. at 2707. However, assuming, without deciding, that Lt. Boone did have a protectable property interest in

both his employment and in his good name, reputation, honesty and integrity, it seems clear that the requirements of due process were met.

As a preliminary observation, the Court notes that Lt. Boone was not terminated from his employment. Although some cases have held that a public employee has a protectable property interest in continued employment, these are not applicable here where Lt. Boone was not fired, but merely suspended for three (3) days without pay. *Hershinow v. Bonamarte*, 735 F.2d 264 (7th Cir.1984). Lt. Boone "cannot complain that he has been made unemployable; he remains employed, and in a job that has considerable tenure rights attached to it." *Id* at 266. Although this suspension may make a black mark on his record, the Court cannot use this pretext to involve itself in every public employee's personnel matters. *Id.* at 266.

Turning now to the question of due process, it is clear from the record that plaintiff's due process rights were satisfied. Lt. Boone was served with notice of a pre-disciplinary hearing, at which he was entitled to explain and refute the charges against him. He appealed his suspension to a grievance committee, which ruled with him. When the City of Mobile appealed the grievance committee's decision, the matter was heard before the entire Mobile County Personnel Board, at a hearing in which Lt. Boone was represented by counsel. The matter is currently on appeal with the Circuit Court of Mobile County. Due Process requires no more. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977).

■ The next allegation in Count One is that plaintiff was denied his First Amendment right to free speech. In analyzing this claim the first step is determining whether Lt. Boone's actions in signing the form containing the remarks written by Sgt. Dove were protected speech. If this was not protected speech under the First Amendment, then the Court's analysis ends here. If Lt. Boone's conduct was protected speech, then the issue becomes whether the defendants regulated it in a permissible

manner. *Ferrara v. Mills*, 781 F.2d 1508, 1515 (11th Cir.1986).

It is settled that public employees have the same right to free speech as private persons. *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and that public employees may not be discharged on bases which infringe those employees constitutionally protected interests in free speech. *Rankin v. McPherson*, —— U.S. ——, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). In the case of public employees, the problem is arriving at a balance between the interests of the employee as a citizen, and those of the employer in promoting the efficiency of the public services it performs through its employees. *Id.* 88 S.Ct. at 1734–35.

Assuming, solely for purposes of this analysis, that Lt. Boone's conduct constituted constitutionally protected speech, the Court turns to the balancing process set out in *Pickering*. The manner, time and place of the employee's speech are factors which may be weighed in the balance. *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 1693, 75 L.Ed.2d 708 (1983); *Ferrara*, 781 F.2d at 1513; *Berry v. Bailey*, 726 F.2d 670, 675 (11th Cir.1984). Thus, on the one hand, we have Lt. Boone's interest in speaking his opinion on matters of social, political and professional importance, and on the other hand, the interest of these Mobile Police Department officials in the efficiency and effectiveness of the Department. The Court notes that the defendants did not attempt to circumscribe Lt. Boone's speech regarding racial matters at all times and under all circumstances. The defendants' limitations on Lt. Boone were very narrow indeed. He was prohibited from expressing his opinions regarding race on personnel forms intended to be circulated through the Department, and outside it. This seems to be a reasonable restriction on the time, place and manner of speech, and thus even if Lt. Boone's speech were constitutionally protected, the Court finds that the defendants' interest in an efficient Police Department outweighs plaintiff's right to freedom of expression under these circumstances.

## COUNT TWO

■ Count Two alleges a conspiracy among the defendant to violate plaintiff's constitutional rights by failing to accord plaintiff due process in regard to his property interest in his employment, by failing to accord plaintiff due process in regard to his right to be free from taint in his reputation, good name, honor and integrity and by depriving plaintiff of his protected First Amendment free speech right.

In order to recover under Title 42 U.S.C. § 1983 on a conspiracy claim, the plaintiff must allege and prove (1) that there was a conspiracy; (2) for the purpose of depriving plaintiff of his constitutional rights; (3) an overt act in furtherance of the conspiracy; and (4) that the plaintiff was injured thereby. *Byrd v. Clark*, 783 F.2d 1002 (11th Cir.1986). Here plaintiff has made a mere conclusory allegation of conspiracy and "a naked assertion of conspiracy is an insufficient foundation for a section 1983 claim", *Harris v. Menendez*, 817 F.2d 737 (11th Cir.1987). *See also Fullman v. Graddick*, 739 F.2d 553, 561 (11th Cir.1984); *Dykes v. Hosemann*, 743 F.2d 1488, 1499 (11th Cir. 1984).

## COUNT THREE

■ Plaintiff's third count alleges that defendants violated his right to equal protection of the laws because he was suspended for three (3) days without pay for conduct that had never been punished before. In order to recover on a Section 1983 Equal Protection claim, plaintiff would have to show that he and other similarly situated police officers were treated differently by the defendants, and that the distinction was not rationally related to a legitimate state interest. *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); *Bowen v. Owens*, 476 U.S. 340, 106 S.Ct. 1881, 90 L.Ed.2d 316 (1986); *Michaels v. Superior Court of Sonoma County*, 450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1982). Plaintiff here claims specifically that he was treated differently from Sgt. Dove, who received only a letter of reprimand.

It is not clear from the documents properly before the Court whether the plaintiff and Sgt. Dove were "similarly situated" for purposes of Equal Protection analysis. They are both apparently white, male police officers. They both participated in completing a report containing language which their supervisors found offensive. However, there are other factual matters bearing on this issue which have not been completely resolved. On the current state of the record, the Court cannot determine whether Lt. Boone and Sgt. Dove were similarly situated for purposes of Equal Protection analysis.

However, the Equal Protection clause does not impose an absolute requirement that a regulation apply equally to all persons, or that persons who are different in fact be treated equally in law. *Michael, supra,* 101 S.Ct. at 1205. Distinctions may be drawn. Equal Protection requires only that they be drawn "in such a manner as to bear some rational relationship to a legitimate state end." *Clemments v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 2843, 73 L.Ed. 2d 508 (1982). The Supreme Court has departed from this traditional analysis only when a suspect class, or a fundamental right, was involved. *Id.* In the instant action, there is neither. Accordingly, defendants were entitled to differentiate between the plaintiff and others if such differentiation was rationally related to a legitimate state end. In this context, defendants' allegation that Lt. Boone is held to a higher standard of professional conduct than St. Dove, because of the difference in their ranks, provides sufficient indication of a rational basis and plaintiff's claim for violation of his right to equal protection of the laws is due to be denied.

## COUNT FOUR

Plaintiff's fourth cause of action is a claim for punitive damages. Although defendants' motion for summary judgment (Tab # 4) presumably was meant to include Count Four of the plaintiff's complaint, the defendants did not brief this issue, as is required by Local Rule 8. However, in

view of the conclusions set out above, this issue is MOOT.

## ATTORNEY'S FEES

 Defendants have also asserted a claim for attorney's fees pursuant to 42 U.S.C. § 1988, which provides that the Court has discretion to award attorney's fees to the prevailing party in a Section 1983 lawsuit. Prevailing defendants in Section 1983 actions may be awarded attorneys fees if the plaintiff's action was "frivolous, unreasonable or without foundation." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1582 (11th Cir.1987). A finding of bad faith is not necessary to justify an award of attorney's fees, although bad faith on the plaintiff's part strengthens the defendants' argument. *Terry Properties, Inc. v. Standard Oil Co.*, 799 F.2d 1523, 1538 (11th Cir.1986) (*citing Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). District courts are cautioned not to conclude that a particular plaintiff's action was unreasonably brought or was without foundation merely because he did not ultimately prevail. *Christiansburg*, 98 S.Ct. at 700. After a careful review of the record, the Court is unable to conclude that plaintiff's action was frivolous, unreasonable, or without foundation, and therefore declines to award attorneys' fees to the defendants.

## SUMMARY

Defendants' motion for summary judgment is GRANTED as to plaintiff's entire complaint.

Defendants' motion for an award of attorneys' fees is DENIED.